KINGS MOUNTAIN BOARD OF EDUCATION, LARRY ALLEN, MELONY BOLIN, RONALD HAWKINS, SHEARRA MILLER, STELLA PUTMAN, JOANNE COLE, OTIS COLE, CHARLIE SMITH, FRANK SMITH, ANGELA SMITH, Petitioners v. NORTH CAROLINA STATE BOARD OF EDUCATION, Respondent, and CLEVELAND COUNTY BOARD OF COMMISSIONERS, Respondent/Intervenor

No. COA02-529

(Filed 5 August 2003)

**1. Schools and Education— merger plan—district over two counties—expansion not automatic with municipal annexation**

A 1905 act establishing the Kings Mountain School district did not allow the automatic expansion of a school district by virtue of a city's annexation power. A municipality may not expand its school district boundaries without delegation of legislative authority, and the 1905 Act contained no such delegation.

**2. Schools and Education— merger—boundaries of school district—de facto doctrine—not applicable**

The de facto doctrine was not applicable to determining the boundaries of the Kings Mountain School District after the town of Kings Mountain expanded into a neighboring county.

**3. Schools and Education— merger—district extending across county lines—certification of number of students in district—estoppel not applicable**

The State Board of Education's annual certification of the number of Gaston County students in the Kings Mountain School District was not an implicit recognition by the Board that the Kings Mountain School District extended into Gaston County and did not estop the Board from approving a school merger plan for Cleveland County that included the Kings Mountain District. A governmental agency is not subject to an estoppel claim to the same extent as an individual or a private corporation; the estoppel doctrine will not apply when there is even the possibility that the exercise of governmental powers might be impeded by an estoppel claim.

**4. Constitutional Law— due process—school merger plan—post-hearing affidavits**

The admission of post-hearing affidavits by an administrative law judge considering a school merger plan was not a due

process violation where the petitioners contended that they had understood that the parties were limited to a submission of a single post-hearing affidavit, but the transcript of the hearing indicates that they consented to "affidavits." Moreover, petitioners did not show how the submission of additional affidavits substantively prejudiced their case.

Appeal by petitioners from order and judgment entered 6 August 2001 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 12 February 2003.

*Schwartz & Shaw, P.L.L.C., by Richard A. Schwartz and Brian C. Shaw, for petitioner appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko and Assistant Attorney General Laura E. Crumpler, for respondent appellee.*

TIMMONS-GOODSON, Judge.

The Kings Mountain Board of Education ("Kings Mountain Board"), along with individual Kings Mountain Board members and parents of children attending public school in the Kings Mountain School District (collectively, "petitioners") appeal from an order and judgment of the trial court affirming a decision by the North Carolina State Board of Education. For the reasons stated herein, we affirm the judgment of the trial court.

The pertinent substantive and procedural facts of the instant appeal are as follows: On 7 November 2000, petitioners filed a petition in Wake County Superior Court seeking judicial review of a final decision by the North Carolina State Board of Education ("State Board"). The final decision by the State Board, dated 13 September 2000, approved a plan submitted by the Cleveland County Board of Commissioners to merge three independent school systems in Cleveland County: (1) the Cleveland County Schools; (2) the Shelby City Schools; and (3) the Kings Mountain District Schools.

In their petition for judicial review, petitioners objected to the school merger, asserting that the Kings Mountain School District was located in both Cleveland County and neighboring Gaston County. Petitioners asserted that, because the town of Kings Mountain extended into Gaston County, the school district also extended into Gaston County. As the Gaston County Board of Commissioners had not approved or adopted the plan of merger, petitioners argued that

the merger was unlawful. Petitioners therefore contended the 13 September 2000 decision by the State Board approving the merger plan was erroneous as a matter of law, arbitrary and capricious, and in excess of the State Board's authority. Petitioners moreover asserted that the decision was procedurally flawed. Petitioners' case came before the trial court on 23 July 2001. After reviewing the evidence and arguments by the parties, the trial court rejected petitioners' claims and entered an order and judgment affirming the decision of the State Board. From this order and judgment, petitioners appeal.

---

The fundamental question on appeal is whether the legal boundaries of the Kings Mountain School District extend into Gaston County. Petitioners assert that they do, arguing that (1) the Kings Mountain School District is authorized to automatically expand under legislation establishing the school district; (2) the Kings Mountain School District enjoys *de facto* legal existence in Gaston County; and (3) the Kings Mountain School District exists within Gaston County under principles of estoppel. Petitioners further contend that the decision of the trial court is procedurally flawed. For the reasons stated hereafter, we conclude that the Kings Mountain School District is located wholly within Cleveland County, and we affirm the order and judgment of the trial court.

In reviewing a final agency decision pursuant to section 150B-51 of the North Carolina General Statutes, a trial court may reverse or modify the agency's decision if it is: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious. *See* N.C. Gen. Stat. § 150B-51(b) (2001). Both parties agree that the trial court conducted a *de novo* review of petitioners' claims that the State Board's decision was made upon unlawful procedure, erroneous as a matter of law, arbitrary and capricious, and in excess of the State Board's authority, and that this was the appropriate standard of review. We must therefore determine whether the trial court correctly applied the *de novo* scope of review to the facts of the instant case. *See Smith v. Richmond Cty. Bd. of Educ.*, 150 N.C. App. 291, 295-96, 563 S.E.2d 258, 263-64 (2002), *disc. review denied*, 356 N.C. 678, 577 S.E.2d 296 (2003).

Under statutory law, "[t]he board of commissioners of a county in which two or more local school administrative units are located, but

all are *located wholly within* the county, may adopt a plan for the consolidation and merger of the units into a single countywide unit." N.C. Gen. Stat. § 115C-68.1(a) (2001) (emphasis added). The State Board of Education must approve the plan of merger. *See* N.C. Gen. Stat. §§ 115C-67 *et. seq.* (2001). However, where "one local school administrative unit is located in [two] counties," the boards of commissioners of both counties must jointly adopt any plan of merger. N.C. Gen. Stat. § 115-68.1(b) (2001). Petitioners contend that the Kings Mountain School District is not "located wholly within" Cleveland County based on several grounds. We address these arguments in turn.

### 1905 Act

[1] Petitioners argue that, under Chapter 381 of the 1905 Private Laws of North Carolina ("the 1905 Act"), the boundaries of the Kings Mountain School District are coterminous with the boundaries of the town of Kings Mountain. Petitioners thus assert that, when the town of Kings Mountain annexed territory in Gaston County during the 1960's, the annexation likewise expanded the boundaries of the school district. The relevant language of the 1905 Act establishing the Kings Mountain School District is as follows:

> SECTION 1. That all the territory embraced in the incorporate limits of the town of Kings Mountain shall be and is hereby constituted the "Kings Mountain Graded School District" for white and colored children.
>
> . . . .
>
> SEC. 8. *Provided*, that the trustees of the said graded school of Kings Mountain shall have the right to admit students from outside of the incorporate limits of Kings Mountain and make a reasonable charge for tuition for the same.

1905 N.C. Private Sess. Laws ch. 381, §§ 1,8. Petitioners argue that the words "shall be" in Section One of the 1905 Act are prospective and indicate that the General Assembly intended for the Kings Mountain School District to expand with any future expansions of the town. Section Eight indicates that any child residing within the town limits of Kings Mountain may attend school without paying tuition. As further support for their argument, petitioners note that the General Assembly ratified legislation creating the school district for the town of Asheboro, North Carolina, on the same day as the 1905 Act. The Asheboro charter recites as follows:

SECTION 1. That all the territory lying within the corporate lim-
its of the town of Ashboro, as the boundaries of said town are on
the first day of April, one thousand nine hundred and five, shall
constitute a public school district for the white and colored chil-
dren and shall be known and designated as "Ashboro Graded
School District."

1905 N.C. Private Sess. Laws ch. 413, § 1. Petitioners contend that,
unlike the 1905 Act establishing the Kings Mountain School District,
the legislation establishing the Asheboro School District specifically
limits the boundaries of the school district to the town boundaries as
they existed on 1 April 1905. Petitioners argue the difference between
the two acts indicates the General Assembly intended for the bound-
aries of the Kings Mountain School District to automatically expand
if and when the boundaries of the town were extended. We disagree.

"A municipality has only such powers as the legislature confers
upon it." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 520, 186
S.E.2d 897, 902 (1972); *Homebuilders Assn. of Charlotte v. City of
Charlotte*, 336 N.C. 37, 41-42, 442 S.E.2d 45, 49 (1994). Such power
may be granted through express language, or it may be implied as
incidental to the powers expressly granted. *See Homebuilders Assn.
of Charlotte*, 336 N.C. at 42, 442 S.E.2d at 49. Further, a municipality
may exercise such powers as are essential to the purposes of the cor-
poration. *See id.* Here, petitioners contend that the town of Kings
Mountain has the authority to unilaterally expand the boundaries of
the school district upon expansion of the town. The ability to create
the boundaries of a school district is vested solely within the power
of the legislature, however. *See Moore v. Board of Education*, 212
N.C. 499, 502, 193 S.E. 732, 733-34 (1937); *McCormac v.
Commissioners*, 90 N.C. 441, 444-45 (1884). Thus, a municipality may
not expand its school district boundaries without an express or
implied delegation of legislative authority. *See School District
Committee v. Board of Education*, 236 N.C. 216, 218, 72 S.E.2d 429,
430 (1952) (noting "the law may confer upon school authorities the
discretionary authority to create or consolidate school districts");
*Moore*, 212 N.C. at 502, 193 S.E. at 733-34; *McCormac*, 90 N.C. at 445.

The language of the 1905 Act contains no express delegation of
legislative authority to the town of Kings Mountain allowing it to uni-
laterally expand the legal boundaries of the Kings Mountain School
District. Nor may such a power be fairly implied from the language.
Notably, at the time of the 1905 Act, the town of Kings Mountain was

without authority to annex territory. *See Abbott v. Town of Highlands*, 52 N.C. App. 69, 73, 277 S.E.2d 820, 823 (noting that, before 1947, town annexation could only occur pursuant to special legislative act), *disc. review denied*, 303 N.C. 710, 283 S.E.2d 136 (1981). As the town of Kings Mountain had no authority to expand its *own* boundaries until forty-two years after the 1905 Act was enacted, the General Assembly could not have intended the words "shall be" to grant the town authority to unilaterally expand the school district.

Comparison to similar legislation establishing and modifying the boundaries of various school districts provides examples of the express language necessary to confer legislative authority and lends further support to our interpretation of the 1905 Act. For example, in 1897 the General Assembly established the school district for the town of Monroe, North Carolina, utilizing language virtually identical to the 1905 Act:

> SECTION 1. That all territory embraced within the corporate limits of the town of Monroe, Union county, shall be and is hereby constituted the Monroe Graded School District for the white and colored children.

1897 N.C. Public Sess. Laws ch. 147, § 1. In 1920, the General Assembly declared that the school district was "coterminous with the city of Monroe." 1920 N.C. Private Extra Sess. Laws ch. 94, § 1. Yet in 1971, the General Assembly expressly rewrote section 1 of Chapter 147 of the Public Laws of 1897 to "provide for an automatic extension of [the school district] boundaries upon extension of the corporate limits of the city of Monroe." 1971 N.C. Sess. Laws ch. 735. The General Assembly again defined the school district's boundaries as "all of the territory within the corporate limits of the City of Monroe" and set forth a metes and bounds description of such boundaries. The General Assembly then declared that

> All annexations to the corporate boundaries of the City of Monroe after July 1, 1971, automatically extend the boundaries of the Monroe City School Administrative Unit to include the territory newly annexed by the City of Monroe.

*Id.* at § 1. The General Assembly thereby expressly granted the City of Monroe the power it formerly lacked to "automatically extend" the school district boundaries.

The General Assembly enacted similar legislation in 1899 when it established the school district in Kinston, North Carolina:

That for the purpose and benefits of this act the city of Kinston shall be a graded school district for both white and colored children and is hereby named and designated as the "Kinston graded school district."

1899 N.C. Public Sess. Laws ch. 96, § 3. In 1967, the General Assembly enacted legislation allowing for expansion of the Kinston school district as follows:

The boundary lines of the Kinston City Administrative School Unit are hereby extended so as to embrace all territory annexed, and to be annexed, by the City of Kinston outside of and beyond the present Kinston City Administrative School Unit.

1967 N.C. Sess. Laws ch. 499, § 1. The 1967 legislation serves as further example of the express language necessary for the power to expand school district boundaries.

Petitioners argue, however, that the Kinston school district legislation supports their interpretation of the 1905 Act. According to petitioners, the State Board overlooked legislation enacted in 1919 regarding the Kinston school district. The 1919 legislation provided that "the geographic boundaries of the [Kinston Graded School District] shall remain as constituted under [chapter 96 of the 1899 Public Laws and chapter 225 of the 1915 Private Laws] until further amended by legislative enactment." 1919 N.C. Private Sess. Laws ch. 92, § 2. Petitioners assert that the legislature thereby "froze" the school district boundaries in 1919, and that by implication, the city of Kinston had the power to expand the boundaries prior to 1919 under the original language of chapter 96 of the 1899 Public Laws. We do not agree with petitioners' interpretation. The language of the 1919 legislation did not recognize or imply any delegation of power to the town of Kinston to expand its school district boundaries. Rather, section two merely indicated that the 1919 amendment did not alter the existing boundaries, and that, *until further amended by legislative enactment*, the boundaries remained as established under the 1899 act and as specifically enlarged by legislation enacted in 1915. *See id.* at §§ 1, 2. The General Assembly thus reaffirmed that school district expansion could not occur without express authority by the legislature.

As evident from the General Assembly's enactment of specific legislation authorizing expansion of the Monroe and Kinston school districts, the mere words "shall be" as contained in the 1905 Act are wholly inadequate to confer power to a municipality to unilaterally

expand its school district boundaries. We conclude that the 1905 Act does not authorize automatic expansion of the Kings Mountain School District pursuant to annexation of territory by the town of Kings Mountain. The State Board's determination that "the 1905 language in the Kings Mountain Graded School District charter does not allow for the automatic expansion of the school district by virtue of the city's annexation power" is therefore correct, and the trial court properly affirmed the decision of the State Board. We overrule this assignment of error.

### De Facto Existence

[2] Petitioners contend that, even if the Kings Mountain School District does not legally exist in Gaston County under the 1905 Act, it nevertheless enjoys *de facto* existence in Gaston County. Petitioners therefore assert that the Kings Mountain School District's status in Gaston County may only be attacked through a *quo warranto* proceeding brought by the Attorney General. We disagree.

*De facto* status arises where a person assumes office "under *color* of authority" or where one "exercises the duties of the office so long or under such circumstances as to raise a presumption of his right; in which cases his necessary official acts are valid as to the public and third persons; but he may be ousted by a direct proceeding." *Norfleet v. Staton*, 73 N.C. 546, 550 (1875); *In re Pittman*, 151 N.C. App. 112, 115, 564 S.E.2d 899, 901 (2002). "The acts of a *de facto* officer are valid in law in respect to the public whom he represents and to third persons with whom he deals officially." *State v. Porter*, 272 N.C. 463, 465-66, 158 S.E.2d 626, 628 (1967). The validity of the title or an act of a *de facto* officer may be challenged only through an action of *quo warranto. See Rogers v. Powell*, 174 N.C. 388, 389, 93 S.E. 917, 917 (1917); *Black's Law Dictionary* 1256 (6th ed. 1990) (defining *quo warranto* as "[a] common law writ designed to test whether a person exercising power is legally entitled to do so"). For example, in *Rogers*, two rival boards of trustees for the school district of Ahoskie, North Carolina, claimed *de jure* status. The plaintiffs sought an injunction against the defendants, who actually occupied and exercised control over the school board, to require the defendants to turn over control and management of the school building. Our Supreme Court affirmed the lower court's dissolution of the preliminary injunction on the grounds that resolution of the issue first required a *quo warranto* action to determine the rightful occupiers of the office. *Id.* at 390, 93 S.E. at 918.

The trial court concluded, and we agree, that the *de facto* doctrine is simply inapplicable to the present case. In contrast to *Rogers*, the present action does not involve a collateral challenge to the right of the Kings Mountain Board members to their office or their authority over students from Gaston County who attend Kings Mountain schools. *Cf. Crabtree v. Board of Education*, 199 N.C. 645, 650, 155 S.E. 550, 552 (1930) (concluding that, where there was no *quo warranto* proceeding to determine the validity of the school board members' right to hold office, the plaintiffs could not challenge the legality of official acts undertaken by the school board members). There is no challenge to any particular act by the Kings Mountain School District, or the title or authority of its officers. Notably, the Kings Mountain School District does not own, administer or operate any schools in Gaston County. Residents of Kings Mountain who live in Gaston County do not pay the Kings Mountain supplemental school tax. Although the State Board's approval of the plan of merger may collaterally nullify the Kings Mountain School District's asserted annexation of territory in Gaston County, such annexation did not take place pursuant to an ordinance or other legislative act, the validity of which could be determined by a *quo warranto* action. *See, e.g., Taylor v. City of Raleigh*, 290 N.C. 608, 617-18, 227 S.E.2d 576, 581-82 (1976) (concluding that the plaintiffs were without standing to indirectly challenge the validity of an annexation ordinance); *Gaskill v. Costlow*, 270 N.C. 686, 689, 155 S.E.2d 148, 150 (1967) (noting that unless an ordinance is void, private individuals may not attack, collaterally or directly, the validity of an ordinance extending the corporate limits of a municipality). In short, a *quo warranto* action has no application to the instant case and would not resolve the primary dispute, which remains a determination of the legal boundaries of the Kings Mountain School District. The State Board and the trial court both determined that the *de facto* doctrine was inapplicable, and we affirm such decision.

*Estoppel*

[3] Finally, petitioners argue that the State Board has implicitly recognized the existence of the Kings Mountain School District in Gaston County in the past, and that the State Board is therefore estopped from approving the plan of merger. Petitioners base their argument of estoppel on the fact that, pursuant to section 115C-430 of the North Carolina General Statutes, the State Board has annually certified the number of Gaston County students within the Kings Mountain School District. Such certification determines funding allocation among the school districts. Certification under

section 115C-430 occurs "[i]f there is more than one local school administrative unit in a county[.]" N.C. Gen. Stat. § 115C-430 (2001). Petitioners assert that the Kings Mountain Board relied upon the State Board's annual certifications to indicate that the Kings Mountain School District extended into Gaston County, and that the State Board is now estopped to deny what it has implicitly recognized over the years. Again, we must disagree with petitioners.

Equitable estoppel is

"the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy."

*Washington v. McLawhorn*, 237 N.C. 449, 454, 75 S.E.2d 402, 405 (1953) (quoting *Bank v. Winder*, 198 N.C. 18, 20, 150 S.E. 489, 491 (1929)). Thus, "[t]he essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App. 691, 703, 535 S.E.2d 84, 92 (2000).

A governmental agency is not subject to an estoppel claim to the same extent as an individual or a private corporation. *See Washington*, 237 N.C. at 454, 75 S.E.2d at 405-06. A governmental entity may be estopped in a particular instance only if it is necessary to prevent a loss to another and the estoppel will not impair the exercise of governmental powers. *See Land-of-Sky Regional Council v. Co. of Henderson*, 78 N.C. App. 85, 91, 336 S.E.2d 653, 657 (1985), *disc. review denied*, 316 N.C. 553, 344 S.E.2d 7 (1986). Even when there is only the possibility that a county's exercise of governmental powers might be impeded by an estoppel claim, the estoppel doctrine will not apply. *See Burrow v. Board of Education*, 61 N.C. App. 619, 627, 301 S.E.2d 704, 708 (1983).

Here, there is no evidence to suggest that, by means of its annual certification, the State Board intentionally represented to the Kings Mountain School District that its boundaries extended into Gaston County, all the while knowing that they did not. First, the certifica-

tions were made to the Gaston County Board of Commissioners, and not to petitioners. Further, the certifications were not made pursuant to any independent determination of boundary lines by the State Board. Finally, application of the estoppel doctrine would impede the State Board from exercising its legislative power to approve or deny school mergers under section 115C-68.1(a) of the North Carolina General Statutes. The trial court therefore properly determined that the estoppel doctrine may not be utilized to prevent the State Board from approving the merger plan, and we overrule this assignment of error.

### Unlawful Procedure

[4] By their final assignment of error, petitioners argue the State Board's decision was made upon unlawful procedure, and that the trial court erred in concluding otherwise. Petitioners assert that their due process rights were violated when the administrative law judge hearing the instant case admitted and considered five post-hearing affidavits submitted by the respondent-appellant Cleveland County Board of Commissioners. According to petitioners, they understood the parties to be limited to submission of a single post-hearing affidavit. Petitioners now assert that the State Board improperly considered the four additional affidavits submitted by the Cleveland County Board of Commissioners, and that the decision was therefore made upon unlawful procedure. We do not agree.

The transcript of the hearing before the administrative law judge contains multiple references to the parties submitting "affidavits." Based on this evidence, the State Board, and later the trial court, concluded that petitioners consented to the admission of additional affidavits rather than a single affidavit. Not only is this conclusion supported by evidence of record, petitioners fail to demonstrate how the submission of the four additional affidavits substantively prejudiced their case. We overrule this assignment of error.

In conclusion, we hold that the trial court properly affirmed the decision of the State Board approving the merger plan submitted by the Cleveland County Board of Commissioners. The judgment of the trial court is therefore

Affirmed.

Judges WYNN and LEVINSON concur.