ROBERT M. MAYO, Petitioner v. NORTH CAROLINA STATE UNIVERSITY, Respondent

No. COA04-240

(Filed 15 February 2005)

## 1. Administrative Law— review of agency decision—de novo

The de novo standard of review was proper for review of an agency decision by NCSU regarding an alleged overpayment of salary. De novo review must be used when a petitioner alleges that an agency's decision is based upon an error of law.

## 2. Contracts— integration of documents—clear language—no parol evidence

Petitioner does not owe a debt to NCSU as result of an alleged overpayment of salary and it is not necessary to address whether the superior court, upon de novo review, properly determined the issue of estoppel. There was a full integration of the documents constituting the employment agreement, the language of the agreement is clear and unambiguous, and the terms relied upon by NCSU were not expressly included in that agreement. Parol evidence may not be introduced to explain the agreement's terms because the language of the agreement was not ambiguous.

## 3. Creditors and Debtors— no contract—tendered check and garnishment—refund

As held above, petitioner does not owe a debt to NCSU, and the superior court erred by failing to order NCSU to return a check from petitioner and a garnished tax refund.

Judge HUNTER dissenting.

Appeal by respondent and cross-appeal by petitioner from order filed 13 November 2003 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 3 November 2004.

*Young Moore & Henderson, P.A., by Christopher A. Page, for petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Q. Shante' Martin, for respondent.*

BRYANT, Judge.

North Carolina State University (NCSU) (respondent) appeals an order filed 13 November 2003, reversing an agency decision and holding that respondent was estopped to claim an overpayment of salary owed by Robert M. Mayo (petitioner). Petitioner cross-appeals.

### Procedural History

On 8 November 2002, NCSU conducted a hearing to determine the validity of a debt NCSU claimed petitioner owed as result of a salary overpayment. On 19 November 2002, NCSU issued its final agency decision pursuant to N.C. Gen. Stat. § 150B-42, upholding the validity of the debt.

Petitioner filed a petition for judicial review on 20 December 2002. Petitioner subsequently filed an amended petition for judicial review on 27 January 2003. This matter came for hearing on the 5 November 2003 session of Wake County Superior Court with the Honorable Donald W. Stephens presiding. By order filed 13 November 2003, the superior court reversed the final agency decision, holding that it was affected by error of law and NCSU was estopped to claim the overpayment of salary as a debt. The superior court, however, held petitioner was not entitled to return of the $500.00 check tendered by petitioner, nor return of any tax refund garnished from petitioner.

On 11 December 2003, NCSU filed notice of appeal to this Court. Petitioner filed his notice of appeal on 22 December 2003, cross-appealing only the portion of the order holding that he was entitled to return of either the check tendered or the seized tax refund.

### Facts

In July 2001, petitioner had worked for NCSU for a period of ten years and was a tenured faculty member of NCSU's Engineering Department and also served as Director of Graduate Programs for the Nuclear Engineering Department. That same month, petitioner informed his Department Head, Dr. Paul Turinsky that he desired to leave NCSU's employment effective 1 September 2001. Dr. Turinsky accepted petitioner's resignation, but failed to report the resignation to NCSU's payroll department until 14 September 2001, two weeks after petitioner's departure.

At the time of accepting petitioner's resignation, Dr. Turinsky did not inform petitioner that petitioner would not be entitled to any

salary for the time period of 1 July 2001 through 14 August 2001. Nor did Dr. Turinsky inform petitioner that it was NCSU's policy that salary paid to petitioner during the 1 July through 14 August time period was a pre-payment for the upcoming academic year, and if petitioner in fact received such money, petitioner would have to repay NCSU the amount received. Dr. Turinsky testified at the agency hearing that it was the department head's duty to inform the faculty in the respective department of the terms of their employment agreement. He also testified that petitioner was at the department on a daily basis between July and August 2001, working on department business, including serving as the Director of Graduate Programs.

On 3 October 2001, Phyllis Jennette, NCSU's Special Payroll Coordinator, informed petitioner that NCSU had determined that he was overpaid in July and August 2001 by a net amount of $4,587.45. The letter stated that the "overpayment was due to your early separation from [NCSU], which resulted in your overpayment for July and August 2001." Jennette requested petitioner to repay the amount of the overpayment. Petitioner declined.

By letter dated 10 April 2002, NCSU informed petitioner that it had garnished his state income tax refund in the amount of $437.88 pursuant to N.C. Gen. Stat. § 105A. The letter stated that the amount would be applied to petitioner's past due payroll debt.

NCSU claimed the debt owed was based on two terms of the employment agreement between NCSU and petitioner. Those terms, according to NCSU, include first, that the July and first half of August salary payments to a nine-month employee are pre-payments for the upcoming academic year. Second, when a nine-month employee who is paid on a twelve-month basis, leaves during the fall of a given academic year, that employee must repay the amount of overpayment.

Dr. Turinsky testified at the agency hearing that these employment terms were material terms of the employment agreement, and that NCSU had the obligation to inform its faculty of the terms of their employment agreement. Both Dr. Turinsky and Brian Simet, NCSU's Director of Payroll Department, however, conceded at the agency hearing that neither of the alleged terms were included in the written employment agreement. Simet moreover testified that these policies were "not stated anywhere specifically." Additionally, Dr. Turinsky testified that he had never heard of those terms prior to being informed by the payroll department in September 2001.

NCSU admits the only written documents constituting the employment agreement between NCSU and petitioner are contained in petitioner's appointment letter, his annual salary letter, and the policies adopted and amended by the UNC Board of Governors and by the NCSU Board of Trustees. Petitioner's official appointment letter stated, "[y]our appointment is subject to all policies adopted and amended by the UNC Board of Governors and by the NCSU Board of Trustees. Pertinent sections of the UNC Code are printed in the Faculty Handbook." None of these documents set forth the terms upon which NCSU based its claim for repayment.

Simet testified at the agency hearing that the only written term of employment upon which the claim is based is the language found in the section of the Faculty Handbook titled "Appointment Pay Periods." Upon cross-examination, however, Simet admitted the provision is also silent concerning NCSU's assertion that salary payments during July and the first half of August are to be considered as prepayments for the upcoming fall academic year, and is silent concerning whether a faculty member who leaves prior to commencement of the upcoming fall academic year must repay those payments.

In support of his argument regarding entitlement to the disputed salary, petitioner testified that in addition to working during the time period of July 2001 through mid August 2001, he did not receive the monthly salary that he was entitled to for the first four months of his employment in 1991. Per his written agreement, petitioner was to be paid at a rate of $3,833.33 per month during the first year of his employment. Instead, he was paid at the rate of $2,253.13 per month for the first four months. In rebuttal, NCSU stated that petitioner was only entitled to the $3,833.33 rate of pay if he had worked the entire twelve months of the previous academic year, and since he started in March, he was entitled to only a portion of the rate of $3,833.33 per month. This partial-pay policy was not contained in any of NCSU's written policies, and petitioner argued he remained undercompensated for his initial employment period.

Petitioner further testified that, as part of an agreement to serve as Director of Graduate Programs, he was required to work one summer month per academic year and was to receive additional compensation equal to one month's salary. Petitioner served as Director of Graduate Programs during July through August 2000, and May through June 2001. In 2001, NCSU paid him a total of $7,968.78, the agreed upon amount, for service as Director of Graduate Programs

for the 2000-2001 academic year. Petitioner continued to serve as Director of Graduate Programs during July through August 2001. Petitioner argued that he remained undercompensated for his July through August 2001 service in this capacity.

The issues on appeal are whether the superior court erred when it held: (I) NCSU was estopped from collecting money it claims petitioner allegedly owed to NCSU as a result of an overpayment in salary; and (II) NCSU could retain petitioner's tax refund and settlement check tendered as reimbursement applied toward the debt allegedly owed for salary overpayment.

## I. *NCSU's Appeal*

[1] When a petitioner alleges that an agency's decision is based upon an error of law, the superior court must undertake a *de novo* review. *Air-A-Plane Corp. v. N.C. Dept. of E.H.N.R.*, 118 N.C. App. 118, 124, 454 S.E.2d 297, 301 (1995). "Under the *de novo* standard of review, the trial court " 'considers the matter anew[] and freely substitutes its own judgment for the agency's.' " *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (citation omitted). Where, however, a petitioner alleges that an agency's decision is unsupported by substantial evidence in the record or is arbitrary and capricious, the superior court must review the "whole record" to determine if the agency's decision is supported by substantial evidence. *Id.*

When this Court reviews appeals from superior court either affirming or reversing the decision of an administrative agency, our scope of review is twofold, and is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard. *In re Appeal by McCrary*, 112 N.C. App. 161, 166, 435 S.E.2d 359, 363 (1993). However, this Court's obligation to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court and remanding the case if the standard of review utilized by the superior court cannot be ascertained. *Capital Outdoor, Inc. v. Guilford County Board of Adjustment*, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002).

Upon review of the superior court's order, it appears that the superior court properly utilized the *de novo* standard of review as to

the issue presented. This Court must now determine whether it properly applied the standard of review.

[2] With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. *Wal-Mart Stores, Inc. v. Ingles Mkts., Inc.*, 158 N.C. App. 414, 418, 581 S.E.2d 111, 115 (2003). The intent of the parties may be derived from the language in the contract. *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). When the contract language is unambiguous, our courts have a duty to construe and enforce the contract as written, without disregarding the express language used. *Southpark Mall Ltd. Part. v. CLT Food Mgmt., Inc.*, 142 N.C. App. 675, 679, 544 S.E.2d 14, 17 (2001). However, if a contract contains language which is ambiguous, a factual question exists, which must be resolved by the trier of fact. *Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 266-67, 554 S.E.2d 863, 866 (2001).

Moreover, the terms of employment contracts require sufficient certainty and specificity with regard to the nature of the services to be performed, the place in which the services are to be rendered, and the compensation to be paid. *Humphrey v. Hill*, 55 N.C. App. 359, 361, 285 S.E.2d 293, 295 (1982). As a general rule, the law of contracts maintains that compensation is an essential term for a contract to render services, and the term "must be definite and certain or capable of being ascertained from the contract itself." *Howell v. C.M. Allen & Co.*, 8 N.C. App. 287, 289, 174 S.E.2d 55, 56 (1970).

Here, the language of the employment agreement is clear and unambiguous—petitioner is to be paid in twelve monthly installments for his service as a nine-month, academic year, tenured faculty member.

The two terms relied upon by NCSU[1] were not expressly included in the employment agreement. Dr. Turinsky, head of petitioner's department, testified that petitioner's written employment agreement is comprised of terms found in petitioner's appointment letter, annual salary letter, and written policies adopted and amended by the UNC Board of Governors and the NCSU Board of Trustees.[2] However, none

___

1. Those terms include first, the July and first half of August salary payments to a nine-month employee are pre-payments for the upcoming academic year. Second, when a nine-month employee, who is paid on a twelve-month basis, leaves prior to commencement of the upcoming fall academic year, that employee must repay the amount of overpayment.

2. In addition, the record reflects an offer of appointment letter sent from NCSU to petitioner dated 8 January 1990 which stated: "A copy of the faculty handbook with

of these documents forming the employment agreement set forth the compensation policies upon which NCSU bases its claim.[3] Simet, Director of NCSU's Payroll Department, admitted at the agency hearing that the policies were "not stated anywhere specifically." Further, Dr. Turinsky testified he did not know of the existence of the terms until September 2001, after petitioner left his employment with NCSU. NCSU, however, attempts to offer parol evidence to explain that payments made in July and August 2001 were pre-payments for the following academic year.

"The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction." *Hall v. Hotel L'Europe, Inc.*, 69 N.C. App. 664, 666, 318 S.E.2d 99, 101 (1984). " 'The rule is otherwise where it is shown that the writing is not a full integration of the terms of the contract,' " *Vestal v. Vestal*, 49 N.C. App. 263, 266, 271 S.E.2d 306, 308 (1980) (citation omitted), or "[w]hen a contract is ambiguous, parol evidence is admissible to show and make certain the intention behind the contract," *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422, 547 S.E.2d 850, 852-53 (2001).

Here Dr. Turinsky testified that petitioner's employment agreement consisted only of petitioner's appointment letter, his annual salary letter, and the policies adopted and amended by the UNC Board of Governors and by the NCSU Board of Trustees. It therefore

---

tenure regulations that govern your appointment was provided to you during your recent visit." Via letter dated 10 January 1991, petitioner accepted NCSU's offer of appointment stating: "I hereby agree to the terms and conditions put forth in your letter of 8 Jan. 1991."

The record contained an appointment letter dated 25 February 1991 which stated: "Your employment is subject to all policies adopted and amended by the UNC Board of Governors and by the NCSU Board of Trustees. Pertinent sections of the UNC Code are printed in the Faculty Handbook along with the text of or reference to other University policies."

Finally, the record contained an appointment letter dated 19 May 1997 which stated: "Your appointment is subject to all policies adopted and amended by the UNC Board of Governors and by the N.C. State University Board of Trustees."

Accordingly, we conclude the written policies adopted and amended by the UNC Board of Governors and the NCSU Board of Trustees were adopted by reference into the employment agreement; and these documents in addition to the appointment letter constituted a full integration of the employment agreement.

3. In addition, during oral arguments before this Court, counsel for NCSU conceded that none of the documents comprising petitioner's employment agreement, specifically stated that NCSU's fiscal year was 1 July through 30 June.

appears the parties intended the above documents to be the final integration of the employment agreement. Additionally, we have already noted the language contained in the documents are unambiguous; thus, parol evidence may not be introduced to explain the terms of the agreement.

We hold petitioner does not owe a debt to NCSU as result of an alleged overpayment of salary. It is therefore unnecessary to address whether the superior court properly determined whether the principle of estoppel applied. This assignment of error is overruled.

## II. *Petitioner's Cross-Appeal*

[3] In its 10 April 2002 letter to petitioner, NCSU stated that it had garnished petitioner's state income tax refund pursuant to the Setoff Debt Collection Act (N.C. Gen. Stat. § 105A) (SODCA). SODCA authorizes garnishment when a person owes a debt to a state agency. *See* N.C.G.S. §§ 105A-2 and 105A-3 (2003). If, however, "a decision finds that a State agency is not entitled to any part of an amount set off, the agency must send the taxpayer the entire amount set off plus the collection assistance fee retained by the Department." N.C.G.S. § 105A-8(d) (2003).

We hold the superior court committed error in failing to order NCSU to return the tax refund garnished from petitioner. We have held petitioner does not owe a debt to NCSU. We further hold that the superior court committed error in failing to order NCSU to return the check petitioner tendered to NCSU in December 2001. As with the tax refund, this amount was erroneously applied by NCSU to the payroll debt alleged by NCSU. Accordingly, we reverse the order of the superior court as pertains to retention of the tax refund and check tendered as a settlement offer.

Affirmed in part; reversed in part.

Judge McGEE concurs.

Judge HUNTER dissents in a separate opinion.

HUNTER, Judge dissenting.

I respectfully dissent from the majority opinion, as the terms of the employment agreement were sufficient to permit collection of the

overpayment found by both the trial court and the administrative law judge. Having so concluded, I would reverse the portion of the trial court's order that estopped respondent from collection of the over-payment, and affirm the portion of the order allowing respondent to retain funds already collected towards the debt.

Petitioner alleges, and the majority agrees, that respondent is pre-vented from collecting the overpayment in salary made in July and August of 2001 under the terms of the contract. The majority con-cludes that as the specifics of the fiscal year were not explicitly set out in the faculty handbook, so as to indicate that such payments were in fact prepayments for the upcoming academic year, the con-tract fails for lack of certainty.

As the majority correctly notes, personal service contracts are enforceable if certain as to "the nature and extent of the serv-ices to be performed, the place where and the person to whom services are to be rendered, and the compensation to be paid." *Humphrey v. Hill*, 55 N.C. App. 359, 361, 285 S.E.2d 293, 295 (1982). Such certainty does not, however, require intricacy of detail to enforce an employment contract. "The specifics of where and when the services were to be performed, the nature of the services and *how compensation was to be made* do not make the contract fail for lack of certainty[.]" *Humphrey*, 55 N.C. App. at 361, 285 S.E.2d at 295 (emphasis added).

Here, however, sufficient evidence is present in the record to find with certainty the terms of petitioner's compensation. Expressly included in his employment agreement were petitioner's yearly salary increase letters. Each of these letters, sent in August, September, or October after the academic year began, stated that petitioner's salary increase for that academic year would be retroactive to 1 July of the respective year. Petitioner's last salary increase letter for the acade-mic year in question, dated 14 August 2000, stated that once approved by the Board of Governors, petitioner would receive an increase of .5.6%, resulting in a "2000-2001 salary of $71,719[,]" and that "[s]alary increases would then be reflected in the August 2000 paychecks, retroactive to July 1, 2000." In conjunction with the terms of the fac-ulty handbook, which stated that "academic-year (9-month) appoint-ments are payable in 12 equal monthly installments[,]" this letter pro-vided petitioner notice that his salary for the 2000-2001 academic year would be paid in full as of June 2001, when the twelve monthly install-ments begun in July 2000 were complete. The terms of the contract

for petitioner's employment for the academic term were therefore certain enough to permit enforcement.[4]

Respondent contends that payments made to petitioner in July and August were due to a mistake of fact, and are therefore recoverable. Our courts have held that " 'money paid to another under the influence of a mistake of fact . . . may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund.' " *Bank v. McManus*, 29 N.C. App. 65, 70, 223 S.E.2d 554, 557 (1976) (citations omitted). This "rule is bottomed on the equitable doctrine that an action will lie for the recovery of money received by one to whom it does not in good conscience belong, the law presuming a promise to pay." *Guaranty Co. v. Reagan*, 256 N.C. 1, 9, 122 S.E.2d 774, 780 (1961). As our Supreme Court noted in *Guaranty Co.*, " '[a]s a general rule, it is no defense to an action for the recovery of a payment made under mistake of fact that the money or property has been paid over to another or spent by the payee.' " *Guaranty Co.*, 256 N.C. at 10, 122 S.E.2d at 781 (citation omitted).

Here, it is uncontested that petitioner resigned from respondent in August 2001 and served only a two-week period of the 2001-2002 academic year in August. Further, although petitioner notified his supervisor of his intent to resign in July 2001, his supervisor did not inform the payroll division until after petitioner's actual separation from respondent. As a result, petitioner was paid two months salary in July and August of 2001. Based on the evidence presented, the administrative law judge concluded:

> [W]hen Dr. Mayo resigned his position with the University on August 31, 2001, he had been paid his annual rate of salary for July and August 2001, which was a prepayment for work to be performed for the upcoming academic year, which began on August 16, 2001. Dr. Mayo was only due compensation for the twelve workdays in the Fall Semester for the period beginning August 16, 2001 through August 31, 2001.

> My determination is that the debt owed to the [U]niversity by Dr. Mayo for overpayment of salary is valid.

---

4. We note that although some issues were raised in the administrative law hearing regarding petitioner's work as director of graduate admissions during July and August 2001, the evidence of record demonstrated that petitioner was paid in full the agreed upon compensation for that additional duty in May and June of 2001, and that the issue of overpayment is solely with regards to petitioner's salary for his academic appointment.

The trial court affirmed the finding of overpayment, stating that: "Under the undisputed facts of this case, the University is estopped to claim the *overpayment of salary* as a debt to the State." (Emphasis added.)

A review of the whole record for competent evidence, as required under the appropriate standard of review, *see Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002), supports the finding of an overpayment made by both the administrative law judge and trial court. Petitioner's supervisor testified he was unaware of the prepayment policy and had delayed reporting petitioner's resignation for internal departmental reasons related to graduate students within the program. As a result, payroll was not informed of petitioner's separation from respondent until after petitioner officially left on 31 August 2001. Payroll had began prepaying petitioner his 2001-2002 salary, as specified in the faculty handbook, under the mistaken belief that petitioner would be continuing as a faculty member in the upcoming academic year. Further, petitioner failed to present sufficient evidence that recovery of the overpayment had caused him to change his position to such an extent that recovery would be unjust, arguing at the administrative hearing only that it was a penalty to require repayment of money which was already spent. This provides no defense to respondent's action. *See Guaranty Co.*, 256 N.C. at 10, 122 S.E.2d at 781.

Therefore, unlike the majority, I would find that petitioner's contract with respondent was enforceable. As a result, an uncontested mistake of fact, as shown by respondent, as to payment under the terms of the contract created a recoverable debt. As petitioner did not demonstrate that such recovery would be unjust, the administrative law judge properly found that respondent could collect the debt created by the mistake of fact.

Petitioner contends that the trial court correctly ruled that collection of the overpayment was barred by estoppel. I disagree.

The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts.

*State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App. 691, 703, 535 S.E.2d 84, 92 (2000). Although our courts have found that

"[a] governmental agency is not subject to an estoppel claim to the same extent as an individual or a private corporation[,]" *Kings Mountain Bd. of Educ. v. N.C. State Bd. of Educ.*, 159 N.C. App. 568, 577, 583 S.E.2d 629, 636 (2003), here, even under the lower standard applied to a private corporation, the essential elements of estoppel are not present.

In this case, no evidence has been presented that respondent made a false representation to petitioner to induce his reliance on the overpayments. Rather, as discussed *supra*, the evidence presented at the hearing showed that there was a mutual mistake, as both petitioner's supervisor and petitioner were unaware at the time of petitioner's resignation that continued payments would result in overpayment. Thus, respondent's actions demonstrate a regrettable misunderstanding rather than an attempt to induce petitioner's reliance on the actions. Therefore, the trial court erred in concluding estoppel barred respondent from collecting the debt created by the overpayment.

Finally, I would affirm the trial court's holding that respondent had no obligation to return either the money garnished from petitioner's income tax return or petitioner's voluntary payment towards his debt. The North Carolina Constitution mandates that "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. art. I, § 32. Our courts have construed this provision to prevent gifts or gratuities of public money and have held that "additional compensation . . . beyond that due for services rendered" is not constitutionally permissible. *Leete v. County of Warren*, 341 N.C. 116, 121, 462 S.E.2d 476, 479 (1995). Further, our statutes require that money due to a state agency, including overpayments, must be "promptly billed, collected and deposited." N.C. Gen. Stat. § 147-86.11(e)(3) (2003), see also N.C. Gen. Stat. §§ 147-86.21 and 147-86.20 (2003). As respondent had both a constitutional and statutory obligation to recoup the overpayment of salary to petitioner, the trial court correctly found that retention of funds already collected was proper.

For the above reasons, I respectfully dissent from the majority and would reverse the portion of the trial court's order estopping respondent from collection of the overpayment, and affirm the portion of the order permitting respondent to retain such monies as have already been collected.