DIETZ, Judge.
 

 *391
 
 Stephanie Trejo was injured while working as a public school teacher and began receiving long-term disability benefits from the State Disability Income Plan. Four years after she started receiving those benefits, the State informed her that it had overpaid her. By law, the State was required to offset Trejo's state benefits by the amount of benefits Trejo hypothetically could have received had she been awarded Social Security disability benefits. Trejo had applied for Social
 
 *165
 
 Security disability, but the Social Security Administration concluded that she was not disabled.
 

 Trejo challenged the State's attempt to recoup these alleged overpayments in an administrative proceeding, but the administrative law judge rejected her arguments. She appealed to the trial court and prevailed. As explained below, we reverse the trial court and reinstate the judgment of the administrative law judge.
 

 The applicable statutory provision-an earlier version of the law currently in place-required the State to apply the hypothetical offset for Social Security disability. Moreover, before Trejo began receiving her state benefits, the State informed her of the possibility that it would need to apply this offset and seek recoupment if it overpaid her. Trejo signed a form acknowledging that she understood these facts. Thus, the equitable doctrines of estoppel, laches, and waiver do not bar the State's efforts to apply the offset and recoup the overpayment, despite the State's four-year delay in discovering the overpayments and seeking recoupment.
 

 Facts and Procedural History
 

 In 2002, Stephanie Trejo was injured while employed by the State as a public school teacher and vested in the State Disability Income Plan for state employees.
 

 In 2006, Trejo applied for disability benefits from the Social Security disability program. The Social Security Administration denied Trejo's
 
 *392
 
 request for Social Security disability, concluding that she "was not under a disability, as defined in the Social Security Act."
 

 That same year, Trejo began the process of applying for long-term disability benefits from the State Disability Income Plan. The State approved Trejo's request for long-term disability benefits, retroactive to 2004, but Trejo did not complete the paperwork required to receive disability payments at that time. In 2009, Trejo completed her paperwork and the State began paying her long-term disability, including retroactive payments for benefits that accrued since 2004.
 

 In July 2013, more than four years after the State first began paying long-term disability benefits to Trejo, the State mailed her a letter informing her that it had mistakenly failed to apply a statutory offset based on the hypothetical Social Security disability benefits she might have received. The letter informed Trejo that this offset should have occurred beginning in January 2008. Trejo challenged her reduction of benefits in an administrative proceeding at the Office of Administrative Hearings. An administrative law judge entered summary judgment in favor of the State and Trejo sought judicial review in Dare County Superior Court. The lower court reversed the administrative decision and entered judgment in favor of Trejo. The State timely appealed to this Court.
 

 Analysis
 

 This is an appeal from a judgment of the Superior Court on judicial review of an administrative decision from the Office of Administrative Hearings. This Court has held that when a party "appeals from superior court either affirming or reversing the decision of an administrative agency, our scope of review is twofold, and is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard."
 
 Mayo v. North Carolina State Univ.
 
 ,
 
 168 N.C. App. 503
 
 , 507,
 
 608 S.E.2d 116
 
 , 120,
 
 aff'd per curiam
 
 ,
 
 360 N.C. 52
 
 ,
 
 619 S.E.2d 502
 
 (2005).
 

 I. Applicability of the offset
 

 The crux of this dispute is the applicability of a mandatory offset for Social Security disability benefits in the law governing long-term disability payments for state employees. The statute applicable here, which is an earlier version of
 
 N.C. Gen. Stat. § 135-106
 
 (b) in effect when Trejo's benefits vested, provides that "[a]fter the commencement of benefits under this section, ... upon the completion of four years from the conclusion of the waiting period as provided in G.S. 135-104, the
 
 *393
 
 beneficiary's benefit shall be reduced by an amount ... equal to a primary Social Security disability benefit to which the beneficiary might be entitled had the beneficiary been awarded Social Security disability benefits."
 
 [1]
 

 *166
 

 N.C. Gen. Stat. § 135-106
 
 (b) (2006) (amended 2007).
 

 In other words, after several years, recipients' state long-term disability benefits must be offset by the amount of Social Security disability benefits that those recipients
 
 hypothetically
 
 could have received, regardless of whether they actually received those benefits.
 

 Trejo argues that, by its plain terms, this statutory offset is not calculated until "[a]fter the commencement of benefits under this section."
 
 N.C. Gen. Stat. § 135-106
 
 (b) (2006). Trejo contends that her benefits did not commence until after she completed her benefits paperwork in 2009 and received her first benefits payments. By that time, Trejo had been unemployed for years and was no longer insured by the Social Security disability program. Thus, she argues, her hypothetical offset is zero because, as someone not qualified for Social Security disability, she could not have received any benefits, even in a hypothetical scenario.
 

 This argument fails for several reasons. First, as the State correctly observes, Trejo's benefits commenced in 2004, not 2009. Although Trejo delayed completing her state long-term disability paperwork until 2009, she qualified for long-term disability payments beginning in 2004 and the State retroactively paid benefits from 2004 onward. Thus, even if we accepted Trejo's interpretation of the statute, her benefits commenced in 2004 and, at that time, Trejo was insured by the Social Security disability program and hypothetically could have received benefits, although the Social Security Administration rejected her request after concluding she was not disabled.
 

 Second, and more fundamentally, the plain language of this mandatory offset provision does not require the recipient to be insured by the Social Security disability program when state benefits commence. The statute instructs that "[a]fter the commencement of benefits under this section" the State must apply an offset "equal to a primary Social Security disability benefit to which the beneficiary might be entitled had the beneficiary been awarded Social Security disability benefits."
 
 N.C. Gen. Stat. § 135-106
 
 (b) (2006). The fact that the recipient's eligibility for
 
 *394
 
 Social Security disability had terminated by the time state disability payments commenced is irrelevant; use of the offset turns on whether, at some point after becoming disabled, the recipient was insured by the Social Security disability program and
 
 might
 
 have been awarded benefits, even if the recipient never applied for those benefits or applied for them but was denied.
 

 That is the case here. Trejo concedes that she was insured by the Social Security disability program following her injury and applied for Social Security disability benefits in 2006. Thus, hypothetically, Trejo could have received Social Security disability benefits beginning in 2006, and those benefits would have continued beyond 2009, when she completed her application for state long-term benefits. Accordingly, despite the fact that Trejo was denied any actual Social Security disability benefits, the State properly applied the statutory offset to account for the "Social Security disability benefit to which the beneficiary might be entitled had the beneficiary been awarded Social Security disability benefits."
 
 N.C. Gen. Stat. § 135-106
 
 (b) (2006).
 

 We also note that, as the State observes, Trejo's interpretation of the statute would create a perverse incentive to delay applying for state long-term disability benefits until after the recipient was no longer insured in the Social Security disability program. This would frustrate two key purposes of the hypothetical offset: first, encouraging recipients to vigorously pursue benefits through the Social Security disability program; and, second, enforcing the policy determination, implicit in the statutory scheme, that those who are denied Social Security disability benefits should receive less state disability benefits because they may be able to seek some form of gainful employment and should do so.
 
 See
 

 N.C. Gen. Stat. §§ 135-100
 
 (b),
 
 *167
 
 135-106(c). Accordingly, we hold that the Office of Administrative Hearings correctly determined that the State must apply the statutory offset in this case.
 

 II. Estoppel, laches, and waiver
 

 Trejo also contends that, even if the statutory offset applies, "equitable principles apply to restrain the actions of the State." Specifically, Trejo argues that the equitable doctrines of estoppel, laches, and waiver bar the State from applying the offset because the State awarded her benefits in 2009 but did not inform her that the offset applied until 2013, more than four years after her benefits began.
 

 Much of the parties' briefing turns on whether the courts have the power to apply these equitable remedies in this case. The State argues that doing so creates an "individualized public disability benefit" unique
 
 *395
 
 to Trejo, which in turn violates various provisions of the North Carolina Constitution governing use of public funds, suspension of state laws, and separation of powers.
 

 As explained below, we need not address these constitutional issues because, even if equitable remedies could be applied in this case, the record on appeal demonstrates that Trejo is not entitled to any of the asserted equitable remedies as a matter of law. Each of the equitable doctrines on which Trejo relies-estoppel, laches, and waiver-require a showing of some affirmative representation by the State that it would not apply the offset, or some change in position by Trejo based on her reasonable belief the State would not apply the offset, or both.
 
 See
 

 Hawkins v. M & J Finance Corp.
 
 ,
 
 238 N.C. 174
 
 , 177,
 
 77 S.E.2d 669
 
 , 672 (1953) (Estoppel requires a representation "which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert.");
 
 Stell v. First Citizens Bank & Tr. Co.
 
 ,
 
 223 N.C. 550
 
 , 552-53,
 
 27 S.E.2d 524
 
 , 526-27 (1943) (Laches requires that the "lapse of time has resulted in some change ... in the relations of the parties which would make it unjust to permit the prosecution of the claim.");
 
 Ussery v. Branch Banking & Tr. Co.
 
 ,
 
 368 N.C. 325
 
 , 336,
 
 777 S.E.2d 272
 
 , 279 (2015) (Waiver of a right requires "knowledge of the right and an intent to waive it.")
 

 Here, Trejo cannot show either a representation by the State that it would not apply the offset, or any change in her own position based on her reasonable belief that the State would not do so. To the contrary, Trejo concedes that in 2006, when she first began her state long-term disability paperwork (which she did not complete until 2009), she signed an acknowledgement form which explained the offset and stated that "payments from the Plan will be reduced by an amount equal to a primary Social Security disability benefit to which you might be entitled had you been awarded Social Security disability benefits." The acknowledgement form further stated that "I fully understand the above and if I am overpaid benefits by the Disability Income Plan, I will reimburse the [Plan] when advised."
 

 Trejo conceded at oral argument that no state representative ever contradicted this language in the acknowledgement. Likewise, Trejo conceded that no state representative told her the State would not seek to apply the offset described in the form, or told her the State would not seek reimbursement if it overpaid her. Finally, there is no evidence in the record that Trejo changed her position based on a reasonable (but mistaken) belief that the State had abandoned its right to apply the offset or recoup overpayment. Thus, as a matter of law, Trejo has
 
 *396
 
 not shown that any of the equitable doctrines on which she relies could apply in this case.
 

 III. Statute of limitations
 

 Finally, Trejo argues that the State's efforts to apply the offset are barred by the statute of limitations contained in
 
 N.C. Gen. Stat. § 135-5
 
 (n). That provision states that "no action shall be commenced by the State or the Retirement System against any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after such overpayment was made."
 
 N.C. Gen. Stat. § 135-5
 
 (n). Trejo argues that the State's reduction in benefits to recoup the overpayment is an "action" by the State and
 
 *168
 
 thus is barred by the three-year limitations period.
 

 The State responds that the reduction in Trejo's benefits is not an "action" but rather a "recoupment," which is expressly authorized by a separate statutory provision:
 

 Notwithstanding any provisions to the contrary, any overpayment of benefits ... to a member in ... the Disability Income Plan of North Carolina, including any benefits paid to ... any member or beneficiary who is later determined to have been ineligible for those benefits or unentitled to those amounts, may be offset against any retirement allowance, return of contributions or any other right accruing under this Chapter to the same person, the person's estate, or designated beneficiary.
 

 N.C. Gen. Stat. § 135-9
 
 .
 

 We agree with the State that the term "action" in
 
 N.C. Gen. Stat. § 135-5
 
 (n) is inapplicable to the State's reduction of future state benefits. When used in this context, the phrase "no action shall be commenced" has a special meaning, drawn from
 
 N.C. Gen. Stat. § 1-2
 
 , which describes an action as "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." The State's reduction of Trejo's benefits to recoup the overpayment and apply the offset going forward is not a proceeding in a court of justice and thus is not the commencement of an action for purposes of the statute of limitations.
 

 Moreover,
 
 N.C. Gen. Stat. § 135-9
 
 permits the State to recoup any overpayment through the reduction of other state benefits owed to the recipient "[n]otwithstanding any provisions to the contrary" and
 
 *397
 

 N.C. Gen. Stat. § 135-5
 
 (n) provides that its three-year limitation "does not affect the right of the Retirement System to recoup overpaid benefits as provided in G.S. 135-9." Thus, the State is permitted to use recoupment to recover an overpayment regardless of whether
 
 N.C. Gen. Stat. § 135-5
 
 (n) might limit the State's ability to recover that same overpayment through other legal means in a court proceeding. Accordingly, we reject Trejo's argument that the State's reduction in her benefits is time barred.
 

 Conclusion
 

 For the reasons discussed above, the State properly applied the statutory offset and reduced Trejo's long-term disability benefits to recoup an overpayment. We reverse the trial court's order and reinstate the Office of Administrative Hearings' entry of judgment in favor of the State.
 

 REVERSED.
 

 Judges ELMORE and ARROWOOD concur.
 

 [1]
 

 The General Assembly later amended the statute to eliminate the delay in applying the offset. That amendment also terminated recipients' state long-term disability benefits entirely after 36 months unless those recipients were awarded Social Security disability benefits.
 
 2007 N.C. Sess. Laws 325
 
 , s. 2.