DAVID ARROWOOD, Petitioner-appellant v. N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent-appellee

No. COA99-940

(Filed 19 September 2000)

1. **Administrative Law— welfare benefits limitation—agency decision—judicial review—federal waiver**

   A de novo review of respondent North Carolina Department of Health and Human Services' decision in August 1996 to implement a 24-month limitation on public assistance after receiving a waiver from the United States Department of Health and Human Services under 42 U.S.C. § 1315(a) in order to implement a demonstration of its "Work First Program" reveals that respondent agency's action was not barred by N.C.G.S. § 150B-19(4), because: (1) the grant of a waiver under 42 U.S.C. § 1315(a) operates as the removal of federal standards in order to allow the state to promulgate its own welfare regulations consistent with state procedures without losing federal welfare funding; and (2) N.C.G.S. § 150B-19(4) exempts respondent from the rule-making requirements of the Administrative Procedure Act.

2. **Public Assistance— welfare benefits limitation—agency decision—unpromulgated rule**

   The trial court erred in failing to find that respondent North Carolina Department of Health and Human Services acted contrary to law in enforcing an unpromulgated provision of general applicability to limit petitioner's welfare benefits to a 24-month period prior to authority from the North Carolina General Assembly or federal government, because: (1) respondent agency's 24-month limitation on welfare benefits constitutes a rule within the meaning of the Administrative Procedure Act

(APA) under N.C.G.S. § 150B-2(8a); (2) a rule under the APA must be promulgated in accordance with Article 2A of the APA; (3) the Work First Program enacted in August 1997 under N.C.G.S. § 108A-25(b1) did not operate retroactively to apply the 24-month limitation to 1996 when the statute makes no reference to the 24-month limitation applying retroactively, does not incorporate by reference any materials that suggest the limitation should apply prior to August 1997, and does not show a legislative intent that the limitation should apply retroactively; (4) a state agency cannot circumvent the requirements of the APA by enforcing a policy of entering into contracts with private individuals; and (5) respondent agency could have simply incorporated its Work First Program Manual into a rule promulgated under the APA as adopted to meet a requirement of the federal government, N.C.G.S. § 150B-21.6.

Judge WALKER dissenting.

Appeal by petitioner from order entered 27 May 1999 by Judge J. Marlene Hyatt in Rutherford County Superior Court. Heard in the Court of Appeals 26 April 2000.

*Pisgah Legal Services, by Curtis B. Venable, for petitioner-appellant.*

*North Carolina Justice and Community Development Center, the North Carolina Chapter of the National Organization of Women, the North Carolina Hunger Network, Southerners for Economic Justice and North Carolina Fair Share, by Carlene McNulty; and Hunton & Williams, by Charles D. Case; and Elizabeth McLaughlin, amicus curiae, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Belinda A. Smith, for the N.C. Department of Health and Human Services, respondent-appellee.*

MARTIN, Judge.

Petitioner-appellant David Arrowood ("petitioner") appeals from an order of the superior court upholding a decision by respondent-appellee North Carolina Department of Health and Human Services ("respondent") to terminate his public assistance benefits.

Petitioner and his family began receiving public assistance from respondent in January 1996 under the federal Aid to Families with

Dependent Children program ("AFDC"), 42 U.S.C. § 601, *et seq.* Under the AFDC program, the federal government partially reimbursed states for welfare programs that were either in compliance with the federal program, or if modified from federal prescriptions, for programs where the state applied for and received a waiver from the United States Department of Health and Human Services ("HHS") under § 1115 of the Social Security Act. 42 U.S.C. § 1315(a).

In 1995, respondent requested such a waiver in order to implement a "demonstration" of its "Work First Program" which contained welfare reform concepts that differed from those under the AFDC program, including a 24-month limitation on the receipt of public assistance. In February 1996, HHS granted respondent's waiver request to implement the proposed provisions of respondent's Work First Program, and respondent subsequently took measures to implement the provisions, including the 24-month limitation. Respondent compiled a Work First Program Manual outlining the procedures for instituting the new policies, and developed a contract for beneficiaries of the program (the "Work First Personal Responsibility Contract-Part II"). According to respondent's manual, beneficiaries were required to sign the contract in order to continue receiving benefits, and a signed contract signified commencement of the 24-month time limitation. Petitioner signed such a contract on 3 May 1996. Respondent did not, however, take any formal action to promulgate rules regarding the Work First policies, and at the time respondent instituted the 24-month time limitation, neither federal law nor state law or regulation contained any such time limit.

In August 1996, the United States Congress repealed the AFDC program and replaced it with a federal block grant entitled Temporary Assistance to Needy Families ("TANF"), 42 U.S.C. § 601, *et seq.,* in which Congress granted states greater flexibility to design and operate their own welfare programs. Thereafter, on 28 August 1997, the North Carolina General Assembly formally enacted the Work First Program, which met the minimum requirements of TANF and included the 24-month limitation on receipt of benefits. N.C. Gen. Stat. § 108A-25(b1). Prior to this enactment, North Carolina statutes simply required compliance with the AFDC program, and contained no time limitation on the receipt of benefits. Following the enactment, on 6 October 1997, respondent requested that petitioner sign a second contract wherein he acknowledged that he had received 15 months of public assistance and was entitled to only 9 more months of participation in the program.

Effective 31 July 1998, the Rutherford County Department of Social Services terminated petitioner's benefits in accordance with the Work First Program Manual, following a determination that petitioner and his family had been receiving benefits for over 24 months. On 19 November 1998, respondent conducted an evidentiary hearing on the termination of petitioner's benefits in which it determined that in April 1996 HHS granted North Carolina's request for waiver authority to institute the Work First Program; that the waiver gave North Carolina the ability to deny AFDC benefits to adults who had received such benefits for 24 months; that the waiver had the force and effect of federal law; that North Carolina lawfully implemented the Work First Program, including the 24-month limitation, in August 1996; and that petitioner's household had received public assistance prior to August 1996 through July 1998. Accordingly, respondent upheld the termination of petitioner's benefits, which termination was reviewed and affirmed by respondent's Chief Hearing Officer.

On 12 March 1999 petitioner filed a Petition for Judicial Review of respondent's decision with the Superior Court of Rutherford County, and on 27 May 1999 the superior court entered an order affirming respondent's decision "as being made upon lawful procedure and not affected by error of law." Petitioner appeals.

---

Petitioner brings forth two assignments of error on appeal: (1) that the superior court erred in failing to find that respondent acted contrary to law in enforcing the 24-month time limitation on public assistance prior to the limit's proper promulgation pursuant to the Administrative Procedure Act, N.C. Gen. Stat. § 150B, *et seq.*; and (2) that the superior court erred in failing to find that respondent acted contrary to law in enforcing an unpromulgated provision of general applicability to limit petitioner's public assistance prior to authority from the North Carolina General Assembly or federal government.

The Administrative Procedure Act ("APA") governs both trial and appellate review of decisions rendered by an administrative agency such as respondent. N.C. Gen. Stat. § 150B, *et seq.*; *Living Centers-Southeast, Inc. v. N.C. Dept. of Health and Human Services, Div. of Facility Services, Certificate of Need Section*, 138 N.C. App. 572, 532 S.E.2d 192 (2000). Pursuant to the APA, an agency decision is first reviewed in superior court, which court may affirm or remand the decision, or may modify or reverse the decision if "the substantial rights of the petitioner may have been prejudiced because the agency's findings, inferences, conclusions or decisions" are any of the following:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b).

"In reviewing a superior court order regarding an agency decision, our scope of review consists of the two-fold task of '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Avant v. Sandhills Center for Mental Health, Developmental Disabilities & Substance Abuse Services*, 132 N.C. App. 542, 545, 513 S.E.2d 79, 82 (1999) (quoting *ACT-UP Triangle v. Com'n for Health Serv.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)). The applicable standard of review depends upon the errors alleged, *Dorsey v. University of North Carolina-Wilmington*, 122 N.C. App. 58, 468 S.E.2d 557, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996), and "[t]he appropriate standard of review for an assertion that a Department of Health and Human Services decision is based on an error of law is *de novo* review." *Bio-Medical Applications of North Carolina, Inc. v. North Carolina Dept. of Human Resources, Div. of Facility Services, Certificate of Need Section*, 136 N.C. App. 103, 108-09, 523 S.E.2d 677, 681 (1999).

In the present case, petitioner alleges that the superior court erred in failing to find that respondent's decision was based on errors of law; petitioner does not allege that the superior court applied an inappropriate standard of review. Thus, our sole task is a *de novo* review of the propriety of respondent's decision, and accordingly, the superior court's affirmation of that decision.

### A.

[1] Petitioner first argues that the August 1996 implementation of the 24-month limitation on receipt of public assistance was affected by

error of law in that no rules regarding the limit's implementation were officially promulgated pursuant to the APA. It is undisputed that in August 1996, following the grant of the waiver request, respondent began implementing the Work First Program, including the 24-month time limitation found in the Work First Manual, without prior approval from the state legislature or through rule-making procedures under the APA.

Respondent does not dispute, however, that the APA ordinarily requires that rules be promulgated in accordance with the Act; rather, respondent contends that, under G.S. § 150B-19(4), the 24-month limitation was exempt from the rule-making requirement of the APA, and could be effective upon receipt of the HHS waiver approval. G.S. § 150B-19(4) provides that an agency is prohibited from promulgating a rule that "[r]epeats the content of a law, a rule, or a federal regulation." N.C. Gen. Stat. § 150B-19(4). Respondent argues that the grant of the waiver to implement the time limitation was, in essence, federal law that operates as an "amendment to the state plan" upon its grant. Respondent maintains that "the waiver authority was granted on February 5, 1996. Therefore, beginning February 5, 1996, petitioner, as an ongoing participant in the program, was subject to the new law." Thus, respondent contends that it could not, under G.S. § 150B-19(4), have promulgated any rules regarding the limitation, and implementation of the 24-month limitation in 1996 was therefore not affected by error of law.

Respondent cites no authority for the proposition that a 42 U.S.C. § 1315(a) waiver operates as binding federal law or regulation, or an immediate amendment to the state plan such that promulgation of the procedures for its implementation would offend G.S. § 150B-19(4). Indeed, our review of case law, the federal waiver statute, and the HHS document granting the waiver leads to the conclusion that the grant of a waiver operates as the *removal* of federal standards in order to allow the state to promulgate its *own* welfare regulations consistent with state procedures.

The United States Court of Appeals for the Fourth Circuit has recognized that "[t]he proper starting point for review of any state initiative in AFDC administration is a recognition of the fact that AFDC is a 'scheme of cooperative federalism.' AFDC is largely financed by the federal government, *but the states bear the primary responsibility for administering the program." Deel v. Jackson*, 862 F.2d 1079, 1083 (4th Cir. 1988), *cert. denied*, 490 U.S. 1092, 104 L.Ed.2d 991 (1989) (emphasis added). Moreover, our own Supreme Court has recognized

that "[s]tates are not required to participate [in the AFDC program], but those states that do must *administer their AFDC programs pursuant to a state plan* that complies with federal statutes and regulations." *Morrell v. Flaherty*, 338 N.C. 230, 232, 449 S.E.2d 175, 176 (1994), *cert. denied*, 515 U.S. 1122, 132 L.Ed.2d 282 (1995) (emphasis added). *See also, Anderson v. Edwards*, 514 U.S. 143, 146, 131 L.Ed.2d 178, 184 (1995) (quotation omitted) (The AFDC program " 'reimburses each State which chooses to participate with a percentage of the funds it expends,' so long as the State 'administer[s] its assistance program pursuant to a state plan that conforms to applicable federal statutes and regulations.' "); *Beno v. Shalala*, 30 F.3d 1057, 1069 (9th Cir. 1994) (quotation omitted) (§ 1315(a) waiver provision enacted in order to allow states to " 'test out new ideas and ways of dealing with the problems of public welfare recipients.' "); *C. K. v. Shalala*, 883 F. Supp. 991, 997-98 (D.N.J. 1995), *affirmed, C. K. v. New Jersey Dept. of Health and Human Services*, 92 F.3d 171 (3rd Cir. 1996) (quotation omitted) (emphasis added) ("The AFDC statutes create a 'scheme of cooperative federalism' in which states are given 'considerable latitude' in the *administration of their own programs.*").

The preceding case law authority establishes that, under the AFDC program, the federal government provides a framework of minimum standards for state-developed plans that are implemented and administered by the state. In *C. K.*, a New Jersey state agency took proper measures to administer its own welfare program approved by an HHS § 1315(a) waiver. *Id.* at 1000. The waiver allowed the agency to implement a statewide family welfare cap, and under the terms and conditions of the waiver, the state was permitted to phase-in welfare reform in various counties "by no later than June 1995." *Id.* at 1001. Two months following the grant of the waiver, New Jersey properly adopted regulations pursuant to state procedures in order to implement the program, and the regulations thereafter became operative on 1 October 1992, the date on which HHS had approved the program to begin. *Id.* Nothing in *C.K.* suggests that the waiver was binding federal law, or that the state encroached on a matter of federal concern when it adopted rules to implement the program pursuant to the state APA. *See also, Deel*, at 1088 ("Plaintiffs' view that a federal statute or regulation must authorize every state initiative in this field would impair the cooperative role of the states in the AFDC program. Congress envisioned such a role for the states, and we decline to restructure the program that Congress has enacted.").

Moreover, it has been held that when interpreting a provision of the AFDC, the language of the statute itself is controlling, and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *State By and Through Pender County Child Support Enforcement Agency ex rel. Crews v. Parker*, 319 N.C. 354, 358, 354 S.E.2d 501, 504 (1987) (citation omitted). The waiver provision at issue here provides in relevant part that,

> [i]n the case of any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of subchapter I, X, XIV, XVI, or XIX of this chapter, or Part A or D of subchapter IV of this chapter, in a State or States—
>
> (1) the Secretary may *waive compliance* with any of the requirements of section 302, 602, 654, 1202, 1352, 1382, or 1396a of this title, as the case may be, to the extent and for the period he finds necessary to *enable such State or States to carry out such project* . . . .

42 U.S.C. § 1315(a) (emphasis added).

This provision does not suggest that the waiver is to operate as a binding federal law or regulation, nor an automatic amendment to a state plan. Rather, the language unambiguously explains the purpose of the waiver: to *remove* the requirement of compliance with federal regulations and allow the state to carry out *its own* welfare provisions that will further the objectives of the federal statute. *See Anderson*, at 156, 131 L.Ed.2d. at 190-91 (quotation omitted) (" 'If Congress had intended to pre-empt state plans and efforts in such an important dimension of the AFDC program . . ., such intentions would in all likelihood have been expressed in direct and unambiguous language.' "). The language of § 1315(a) does not contain any unambiguous intention that a waiver operate as a federal regulation, and we therefore hold that while the waiver is issued under federal law, respondent, the party charged with developing and implementing its own demonstration, was still bound by state law in the implementation of these changes.

Moreover, the language of the 1996 HHS document granting the waiver supports a conclusion that the waiver does not immediately, upon its approval, function as binding federal law or a federal amendment to the state plan. Section 1.0 under "Waiver Terms and Conditions" provides respondent the right to unilaterally terminate

the demonstration. Clearly, states do not generally have the authority to unilaterally terminate binding federal laws and regulations. Moreover, section 1.1 of the HHS document reveals the federal government's intent that state law play a role in the implementation of the proposed demonstration: "[f]ailure to operate the demonstration as approved and according to Federal and State statutes and regulations may result in withdrawal of waivers." Section 1.2 further establishes the possibility that future state statutes may alter the effect of the design and impact of the demonstration, and as a result, a need may arise to re-evaluate the waiver. Had the federal government intended the waiver to operate as binding federal law, it is dubious that it would expressly provide the state with unfettered discretion to enact rules that alter the law's effect.

Additionally, the fact that the HHS waiver does not specify an effective date for commencement of the 24-month limitation establishes that HHS intended that the actual implementation be a matter of state concern. The HHS document merely states that implementation shall be no earlier than 1 March 1996, and no later than 1 March 1997. The letter from HHS accompanying the terms and conditions of the waiver supports this position, as it states that the purpose of granting the waivers is the department's belief "that the Federal Government must give states the flexibility to design new approaches to their local problems, provided that these proposals meet Federal standards."

Indeed, this State's 18 August 1997 Work First Program enactment, G.S. § 108A-25(b1), reveals the legislature's intent that the program be implemented by rules properly promulgated in accordance with state procedures. Section 108A-27.8(c) of the statute provides that the Social Services Commission "may *adopt rules* in accordance with G.S. 143B-153 *when necessary to implement* this Article and subject to delegation by the Secretary of any rule-making authority to implement the provisions of the State Plan." N.C. Gen. Stat. § 108A-27.8(c) (emphasis added). Moreover, § 108A-27(c) provides that the Department "may change the Work First Program when required to comply with federal law. Any changes in federal law that necessitate a change in the Work First Program *shall be effected by temporary rule* until the next State Plan is approved by the General Assembly." N.C. Gen. Stat. § 108A-27(c) (emphasis added). Clearly, the legislature intended that provisions of the Work First Program, even where necessarily changed to comply with federal law, be promulgated as rules in accordance with state procedures; none of the

statutes addressing implementation of the Work First Program portends to waive the requirements of the APA for implementation of the program.

The waiver operates as a grant of permission from HHS for respondent to deviate from the requirements of federal law *without* losing federal welfare funding. Nothing in the waiver provision itself, in the HHS document granting the waiver, nor any other authority which we have reviewed, including the Code of Federal Regulations, indicates that the waiver has the binding effect of federal law duly promulgated by a federal agency or other law-making body such that G.S. § 150B-19(4) exempts respondent from the rule-making requirements of the APA.

## B.

**[2]** Having decided that respondent was not barred under G.S. § 150B-19(4) from promulgating rules for implementation of the 24-month limitation, we must determine whether the APA required that the 24-month limitation be promulgated under the Act. This inquiry requires an analysis of whether the limitation constitutes a "rule" within the meaning of the APA. A rule, as defined by G.S. § 150B-2(8a), is not valid unless adopted in substantial compliance with Article 2A of the APA. N.C. Gen. Stat. § 150B-18. The APA defines a rule as "any agency regulation, standard, or statement of general applicability which implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency, or that describes the procedure or practice requirements of an agency." N.C. Gen. Stat. § 150B-2(8a).

The 24-month time limitation adopted by respondent is a "rule" within the meaning of the APA and must therefore be promulgated in accordance with Article 2A of the APA. The limitation clearly creates a binding standard of general applicability that describes respondent's procedures and practice requirements. This Court recently addressed a similar argument in the context of Title XIX of the Social Security Act which, like the AFDC program, gives states the option of participating in a federal Medicaid program in order to receive federal reimbursement for a portion of program costs. *See Dillingham v. North Carolina Dept. of Human Services*, 132 N.C. App. 704, 513 S.E.2d 823 (1999).

The petitioner in *Dillingham* argued that the respondent-agency's State Adult Medicaid Manual, which required a presumption of ineli-

gibility to be rebutted by clear and convincing evidence, was invalid because the manual provision had not been promulgated pursuant to the APA. *Id.* at 707-08, 513 S.E.2d at 826. This Court determined that the eligibility provision was a "rule" within the meaning of the APA, as the provision created a "binding standard" that "describes the procedure and evidentiary requirements utilized by [the agency]." *Id.* at 710, 513 S.E.2d at 827. Thus, the provision in the manual was held to be invalid as it was not promulgated pursuant to Article 2A of the APA. *Id.* at 710, 513 S.E.2d at 827. Likewise, the 24-month limitation at issue here is a rule within the meaning of the APA, and therefore requires promulgation pursuant to the APA. *See also Duke University Medical Center v. Bruton*, 134 N.C. App. 39, 52, 516 S.E.2d 633, 641 (1999) (holding Division of Medical Assistance policy denying Medicaid payments to those eligible for Medicare, but who failed to enroll, is an administrative "rule" under APA: "the requirement creates a binding standard which interprets the eligibility and coverage provisions of the Medicaid law and, in addition, denies a substantial right.").

Moreover, we are unpersuaded by any argument that the Work First Program as properly enacted in August 1997 operates retroactively to apply the 24-month limitation in 1996. "Ordinarily, statutes are presumed to act prospectively only, unless it is clear that the legislature intended that the law be applied retroactively." *Twadell v. Anderson*, 136 N.C. App. 56, 66, 523 S.E.2d 710, 717 (1999), *disc. review denied*, 351 N.C. 480, —— S.E.2d —— (2000) (citation omitted). " '[A]n intention to give a statute a retroactive operation will not be inferred.' " *Brannock v. Brannock*, 135 N.C. App. 635, 644, 523 S.E.2d 110, 115 (1999), *disc. review denied*, 351 N.C. 351, 543 S.E.2d 123 (2000). Here, the statute makes no reference to the 24-month limitation applying retroactively, does not incorporate by reference any materials that suggest the limitation should apply prior to August 1997, nor otherwise evinces a legislative intent that the limitation apply retroactively.

Nor are we persuaded by respondent's contention that the APA does not apply, but rather, petitioner's signing of the Work First Personal Responsibility Contract-Part II and subsequent contract "changed the relationship between the State and the benefits recipient to one of a contractual nature." A state agency cannot circumvent the requirements of the APA by enforcing a policy of entering into contracts with private individuals.

ARROWOOD v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[140 N.C. App. 31 (2000)]

Finally, we note that the burden placed on respondent to comply with the APA is not heavy. Indeed, respondent could have simply incorporated its Work First Program Manual into a rule promulgated under the APA as "adopted to meet a requirement of the federal government." N.C. Gen. Stat. § 150B-21.6. Having failed to do so, and upon our determination that the 24-month limitation constitutes a "rule" within the meaning of the APA, we hold that respondent's termination of petitioner's public assistance effective 31 July 1998 was affected by error of law, and accordingly, the superior court erred in upholding respondent's decision. In view of this holding, an analysis of petitioner's remaining assignment of error with alternative arguments is unnecessary.

Reversed.

Judge LEWIS concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from the majority opinion holding that respondent was not barred under N.C. Gen. Stat. § 150B-19(4) from promulgating rules for implementation of the twenty-four month limitation of Work First benefits.

After the Rutherford County Department of Social Services upheld the decision to terminate petitioner's Work First Family Assistance, he exercised his right of review by respondent. After a hearing, the respondent issued a decision, later upheld by the chief hearing officer, which, in part, found facts and conclusions as follows:

REGULATORY HISTORY AND AUTHORITY—42 U.S.C. § 1315 allows the Secretary of the United States Department of Health and Human Services (HHS) to waive requirements contained in 42 U.S.C. § 602 that pertain to state plans for Aid to Families with Dependent Children (AFDC) in cases of demonstration or pilot projects. On September 14, 1995, Governor Hunt formally submitted a request for authority to operate a statewide welfare demonstration project, entitled *Work First*, to HHS. In April, 1996 HHS issued waiver authority to North Carolina to operate the *Work First* program. The waiver gave North Carolina authority to

deny AFDC benefits to adults who had received AFDC for 24 months. North Carolina implemented the *Work First* program, including the 24-month time limit for benefits, in August, 1996. This waiver authority had the legal effect of superseding existing federal statutes that contain no such provision for time limiting benefits. G.S. 150B-19(4) prohibits an agency from adopting a rule that repeats the content of a law, rule, or federal regulation. The waiver authority cited above had the force and effect of federal law. Furthermore, it was sufficiently clear as to the provisions of the waiver authority. There was, therefore, no need for state regulation, and any such regulation would have been repetitive in violation of G.S. 150B-19.

The respondent then concluded that petitioner's benefits were properly terminated effective 31 July 1998. Petitioner was advised that he could seek a review of the decision in superior court.

Petitioner apparently does not contend that Work First benefits could be limited to twenty-four months. He only contends that an APA rule should have been adopted to authorize such. Likewise, petitioner did not petition the respondent to adopt such a rule pursuant to N.C. Gen. Stat. § 150B-20.

The respondent's position is summed up as follows: When petitioner signed the contract, he knew of the twenty-four month limitation. The purpose of APA rules is to assume that benefits recipients, such as petitioner, are afforded their due process rights. Petitioner was afforded notice and exercised his appeal rights at every level of review. The Work First Program waiver constitutes federal law in that 42 U.S.C. § 602 establishes the program and 42 U.S.C. § 1315 allows federal authorities to modify federal law by approving a state's waiver request. The waiver then became the federal law with which a state must comply. Thus, any APA rules would only repeat the law that is in the waiver and N.C. Gen. Stat. § 150B-19(4) prohibits an agency from adopting a rule that "repeats the content of a law, a rule or a federal regulation." The waiver authority includes waiver terms and conditions for the Work First Program and comprises approximately twenty pages in the record.

In the waiver authority granted to this State, the waiver terms and conditions required:

(1) the demonstration provisions (Work First program) be implemented statewide no earlier than March 1, 1996 and no later than March 1, 1997;

(2) the State to deny AFDC to a family if the parent refused to sign the Personal Responsibility contract;

(3) the State to limit the amount of time a family participating in Work First employment and training receiving AFDC benefits to twenty-four months.

Thus, respondent could elect a time within this one-year period to begin implementation of the program. Petitioner was required to sign a contract which clearly set forth the beginning time for the twenty-four month period he was to receive benefits.

I do not believe that this Court's recent decision in *Dillingham v. N.C. Dept. of Human Resources*, 132 N.C. App. 704, 513 S.E.2d 823 (1999) is controlling authority. There, the manual required the applicant/recipient to present "clear and convincing written evidence" to rebut the presumption while federal law only required a "satisfactory showing." *Dillingham*, 132 N.C. App. at 711, 513 S.E.2d at 828. This Court held the applicable standard of proof be "by a preponderance of the evidence." *Id.* at 712, 513 S.E.2d at 828.

Thus, I agree that an APA rule was necessary in *Dillingham* in order to establish the proper burden of proof consistent with the federal law requirement of a "satisfactory showing." *Id.* at 711, 513 S.E.2d at 828. I further conclude from *Dillingham* that any APA rule adopted with the higher standard of proof of "clear and convincing written evidence" would have been invalid since our Court held: "In the absence of a valid statute or regulation establishing the standard of proof, G.S. § 150B-29 requires that 'the rules of evidence as applied in the trial division of the General Court of Justice shall be followed.' " *Id.* at 711-712, 513 S.E.2d at 828. Our Supreme Court has further stated "the standard of proof in administrative matters is by the greater weight of the evidence, and it is error to require a showing by clear, cogent and convincing evidence." *Id.* at 712, 513 S.E.2d at 828, *citng In re Thomas*, 281 N.C. 598, 189 S.E.2d 245 (1972).

I conclude the waiver, with its terms and conditions, is clear and no APA rule is required. I would affirm the order of the superior court which affirmed the respondent's decision as being made upon lawful procedure and not affected by error of law.