MICHAEL JONATHAN McCRANN, JR., BY GUARDIANS KELLY C. McCRANN, AND MICHAEL J. McCRANN, PETITIONERS v. NC DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE SERVICES, RESPONDENT

No. COA10-80

(Filed 18 January 2011)

**1. Administrative Law— final agency decision—de novo review applied—adoption of administrative law judge's decision permissible**

The superior court applied the appropriate *de novo* standard of review to the Department of Health and Human Services' decision denying petitioner benefits. While the Administrative Procedures Act required the trial court to make findings of fact and conclusions of law, it explicitly permitted the trial judge to adopt the administrative law judge's decision while fulfilling this duty.

**2. Administrative Law— de novo review—properly applied**

The superior court properly found that a waiver provision which determined petitioner's Medicaid eligibility did not carry

the force of law as it was not promulgated in accordance with either the North Carolina Administrative Procedures Act or the federal Administrative Procedures Act. The superior court did not err in concluding that the Department of Health and Human Services' denial of benefits to petitioner was arbitrary and capricious and in reversing the order.

**3. Administrative Law— Erroneous denial of Medicaid benefits—reimbursement for services proper**

The superior court erred in denying petitioners' request for reimbursement for rehabilitation services paid by petitioners after respondent denied coverage for petitioner son's benefits. The vendor payment principle did not preclude the Department of Health and Human Services from making corrective action payments directly to petitioners and the expenses eligible for reimbursement were not limited to expenses petitioners incurred prior to acquiring Medicaid eligibility. The matter was remanded for an evidentiary hearing to determine the proper amount of reimbursement.

Appeal by respondent from order entered 25 September 2009 by Judge Donald W. Stephens in Wake County Superior Court. Appeal by petitioners from judgment entered 15 December 2009 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 31 August 2010.

*Ragsdale Liggett PLLC, by James L. Conner II and Melissa Dewey Brumback, for petitioner appellants-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General Janette Soles Nelson and Special Deputy Attorney General Richard Slipsky, for respondent appellant-appellee.*

*John R. Rittelmeyer and Holly A. Stiles for Disability Rights North Carolina, amicus curiae.*

HUNTER, JR., Robert N., Judge.

The North Carolina Department of Health and Human Services, Division of Mental Health, Developmental Disabilities, and Substance Abuse Services (hereinafter "DHHS" or "respondent") appeals the superior court's order finding respondent's denial of benefits to petitioner Michael Jonathan McCrann, Jr., was arbitrary and capricious. Respondent argues that the denial of benefits was based upon a

federally authorized Medicaid waiver and was therefore proper. Petitioners urge this Court to affirm the superior court's finding with respect to respondent's denial of benefits, but seek our reversal of the superior court's decision to deny reimbursement to petitioners for expenses incurred to maintain the denied services throughout this appeal. After careful review, we affirm the superior court's decision finding the denial of benefits to be arbitrary and capricious, but reverse on the issue of reimbursement and remand for determination of the amount of reimbursement due to petitioners.

## I. Factual and Procedural History

Michael Jonathan McCrann, Jr. ("Jonathan") is the twenty-eight-year-old son of Michael and Kelly McCrann. Mr. and Mrs. McCrann are Jonathan's legal guardians and join Jonathan as petitioners in this appeal. Since birth Jonathan has endured multiple disabilities including mental retardation, autism, cerebral palsy, and he is legally blind. To address the special needs of individuals such as Jonathan, North Carolina has developed a Medicaid-funded medical assistance program called the Community Alternatives Program for Persons with Mental Retardation and Other Developmental Disabilities ("CAP Program").

The centerpiece of the CAP Program is an individualized Plan of Care, which is a schedule of services to be provided to the program participant. Plans of Care are reviewed each year and are tailored to ensure the medical and social needs of each patient are met. Jonathan's Plan of Care reflects the significant amount of one-on-one services necessitated by his physical and mental disabilities and prescribes a personal caregiver to assist Jonathan with his daily functions. Without a personal caregiver, Jonathan would have significant difficulty with the most basic of daily activities such as using the bathroom, moving about safely, communicating with others, and learning. For most of his life, Jonathan has received these services under the CAP Program while living at home with his parents. In 2003, in an effort to help Jonathan become more independent, his parents moved him into a group home and continued to provide him care through a personal caregiver. Absent this intensive therapy Jonathan would require institutionalization.

For more than ten years, Edna McNeill has been the primary provider of these services for Jonathan. Ms. McNeill began caring for Jonathan in the McCranns' home and has continued in her role as Jonathan's primary caregiver since his admission to the Pinetree

Group Home ("Pinetree"). The two have developed a trusting bond that has facilitated Jonathan's progress from a classification of "profoundly mentally retarded" to "moderately mentally retarded." It is not surprising then that Jonathan's Plan of Care, which was developed by a team of professionals, his family, and himself, designates Ms. McNeill as the person best suited to provide the "home support" component of the plan.

The Code of Federal Regulations authorizes federal grants to reimburse states for medical assistance programs for the disabled, such as the CAP Program. *See* 42 C.F.R. § 430.0 (2009). For a state to be eligible for reimbursement for program expenses, the state's program must meet certain federal requirements. States are afforded flexibility, however, to implement changes in these assistance programs in order to try more cost-effective delivery of services or to tailor services to the specific needs of certain groups of benefit recipients. *See* 42 C.F.R. § 430.25(b) (2009). States must seek approval for such program changes from the federal government through a program "waiver." *See id.* If a waiver is approved, the federal government thereby waives compliance with state program requirements while permitting states to remain eligible for reimbursement with federal grants. *See id.* Waivers do not permit states to implement permanent changes in their Medicaid assistance programs; waivers are initially approved for a period of two to three years and may be renewed thereafter. *See* 42 U.S.C. § 430.25(h).

Operating under the 2001 Waiver, the CAP Program paid for Ms. McNeill's services from 2002 through 2005 as that waiver permitted rehabilitation services to be provided by a third-party provider in a group home setting. In 2005, however, DHHS revised the 2001 Waiver and received approval to implement the new waiver (hereinafter the "2005 Waiver") by the Centers for Medicare and Medicaid Services, effective 1 July 2005. After the 2005 Waiver was approved, Jonathan's case manager reviewed and updated Jonathan's 2005 Plan of Care to bring it in compliance with the new waiver provisions. This updated Plan of Care requested that the services provided by Ms. McNeill be continued and that the services be provided in Jonathan's group home. The Plan of Care was approved. In April of 2006, however, upon the next annual review of Jonathan's Plan of Care, DHHS determined that these same services should be denied.

Revisions to the CAP Program that were approved in the 2005 Waiver provide, in pertinent part:

McCRANN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[209 N.C. App. 241 (2011)]

Individuals who live in licensed residential settings or unlicensed alternative family living arrangements may only receive the community component of this service. The community component of Home and Community supports does not replace the Residential Support provider's responsibility to provide support to individuals in their homes and the community, but is intended to support those who choose to engage in community activities that are not provided through a licensed day program.

DHHS interpreted this language to exclude third-party providers from providing services to benefit recipients in a group home setting. Thus, DHHS concluded that while the 2001 Waiver permitted Ms. McNeill to provide services to Jonathan in his group home, the 2005 Waiver precluded coverage for Ms. McNeill's services under Jonathan's Plan of Care—despite having approved the same services under the same waiver (the 2005 Waiver) the previous year. Jonathan could receive Ms. McNeill's services if he lived at home or Pinetree employees could provide *comparable* services for which the State could be reimbursed through Medicaid.

On 25 April 2006, DHHS informed the McCranns that Ms. McNeill's services would no longer be covered. The McCranns filed a petition for a contested case hearing in the Office of Administrative Hearings. In a decision entered 9 January 2008, the Administrative Law Judge ("ALJ") held that DHHS' denial of Jonathan's benefits was "arbitrary and capricious and erroneous as a matter of law." DHHS overturned the ALJ's decision in a Final Agency Decision on 30 April 2008 affirming the denial of benefits.

The McCranns petitioned for judicial review of the Final Agency Decision in Wake County Superior Court pursuant to N.C. Gen. Stat. § 150B-43 (2009). In that petition, the McCranns also sought to have the superior court order DHHS to reimburse the McCranns for their out-of-pocket expenses paid to maintain the denied benefits.[1] On 25 September 2009, following a hearing on the matter, Judge Donald W. Stephens adopted the decision of the ALJ and reversed DHHS' denial of benefits. From this order, DHHS appeals. In a separate order entered 15 December 2009, the superior court denied the request for

---

1. Jonathan's father, Michael McCrann, believing that the Pinetree staff could not serve as a replacement for the "highly effective, compassionate, and consistent care" that Ms. McNeill had provided Jonathan since his childhood, decided it was imperative for Jonathan's health and safety that her services be maintained, even if it meant paying for those services himself. Mr. McCrann has thus continued to pay for Ms. McNeill's services since coverage for the services was denied by DHHS.

reimbursement of expenses incurred by the McCranns to maintain Ms. McNeill's services during the pendency of the action. The McCranns appeal from this order.

## II. Jurisdiction and Standard of Review

As the parties appeal from final judgments of a superior court entered upon the court's review of a decision of an administrative agency, this Court has jurisdiction over the appeals. N.C. Gen. Stat. §§ 7A-27(b) and 105B-52 (2009). When this Court reviews an appeal from the superior court reversing the decision of an administrative agency, our standard of review is twofold and is limited to determining: (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard. *Mayo v. N.C. State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120, *aff'd*, 360 N.C. 52, 619 S.E.2d 502 (2005).

## III. Analysis

## A. The Trial Court's Standard of Review

[1] Respondent assigns error to the superior court's review of its Final Agency Decision. The thrust of respondent's first argument is that the superior court failed to make independent findings of fact and conclusions of law as required by the North Carolina Administrative Procedures Act ("APA"), Chapter 150B of our General Statutes and, therefore, this matter should be remanded back to the superior court to make such determinations. *See* N.C. Gen. Stat. § 150B-51 (2009). We conclude the superior court applied the proper standard of review.

The APA requires that when a trial court reviews an administrative agency's final decision that has rejected the ALJ's decision, the trial court must conduct a *de novo* review and "shall make findings of fact and conclusions of law." N.C. Gen. Stat. § 150B-51(c). Respondent urges that the superior court did not fulfill its duty because the court adopted the ALJ's decision "in its entirety, including all findings of fact and conclusions of law." Consequently, respondent contends, it is impossible to determine whether the superior court properly applied a *de novo* standard of review.

Respondent's contention, however, is contradicted by the plain language of the APA. Section 150B-51(c), which respondent correctly cites as requiring the trial court to make findings of fact and conclusions of law, states: "In reviewing the case, the court shall not give

deference to any prior decision made in the case," however, the court *"may adopt the administrative law judge's decision*; may adopt, reverse, or modify the agency's decision; may remand the case to the agency . . . or reverse or modify the final decision . . . and may take any other action allowed by law." N.C. Gen. Stat. § 150B-51(c) (emphasis added). Thus, while the APA requires the trial court to make findings of fact and conclusions of law, it explicitly permits the trial judge to adopt the ALJ's decision while fulfilling this duty.

Respondent's contention that the trial court did not properly execute its duty is also rebutted by North Carolina case law. Addressing a similar argument that a superior court judge had not abided by his duty to make findings of fact where, after a review of the evidence, he concurred with the findings of another judge, our Supreme Court aptly concluded:

> It is not to be presumed that a learned and just judge would trifle in the discharge of his duties by accepting the findings of fact by another that he ought himself to make. The presumption is to the contrary. If, upon a careful consideration of the evidence, the court found the facts to be as did his predecessor on a former like occasion in the same matter, the mere fact that he adopted the findings of fact as set down in writing is not good ground of exception or objection.

*Taylor v. Pope*, 106 N.C. 267, 269-70, 11 S.E. 257, 258 (1890) (citing *Silver Valley Min. Co. v. Baltimore Smelting Co.*, 99 N.C. 445, 6 S.E. 735 (1888)).

In the present case, the order of the superior court states, in part:

> This court has carefully considered the arguments of counsel, the brief of Petitioners, . . . the decision of Judge Webster below, the Final Agency Decision, and the whole official record submitted by the Respondent. This Court has given no deference to any prior decision in this case, but has reviewed and considered the official record *de novo*.

Thus, it is evident the superior court conducted a *de novo* review of the record and made independent findings. That it was convenient to adopt the ALJ's findings has no bearing upon whether the court conducted the proper review. *See id.* at 270, 11 S.E. at 258. Accordingly, we conclude the superior court applied the appropriate standard of review and respondent's argument is without merit.

## B. The Trial Court's Application of the Standard of Review

**[2]** Having established that the superior court conducted the appropriate *de novo* review, we turn to the question of whether it applied this standard properly. *See Mayo*, 168 N.C. App. at 507, 608 S.E.2d at 120. Respondent raises two arguments in its contention that the lower court erred in its *de novo* review: (1) the superior court erred in failing to find the Waiver carried the force of law; and (2) the superior court erred in failing to find the terms of the Waiver provided legal justification for the denial of Jonathan's benefits. We conclude that the waiver provision at issue is a "rule" within the meaning of the APA and, absent promulgation in accordance with the APA, does not carry the force of law.

The North Carolina APA defines a "rule" as any agency regulation that implements or interprets an enactment of our General Assembly or the U.S. Congress or a regulation adopted by a federal agency that describes an agency's procedure or practice requirements. N.C. Gen. Stat. § 150B-2(8a) (2009). Such a rule is not valid unless adopted in accordance with the provisions of Article 2A of the APA, which requires, absent exigent circumstances, publication of the proposed change in the North Carolina Register and, in some instances, public hearings and public comment periods. N.C. Gen. Stat. §§ 150B-18 and 150B-21.1 (2009); *see Dillingham v. N.C. Dep't of Human Resources*, 132 N.C. App. 704, 710, 513 S.E.2d 823, 828 (1999).

Petitioners cite *Dillingham v. N.C. Dep't of Human Resources* in support of their argument that the Waiver does not carry the force of law. *See* 132 N.C. App. 704, 513 S.E.2d 823. In *Dillingham*, this Court addressed the validity of a provision in the Department of Social Service's ("DSS") State Adult Medicaid Manual that raised the standard of proof required to rebut a presumption of ineligibility due to alleged improper asset transfers from a "satisfactory showing" to "clear and convincing written evidence." *Id.* at 707-08, 513 S.E.2d at 826. This Court noted that while federal law required an applicant to make a "satisfactory showing" of evidence to rebut the presumption of ineligibility, neither federal statutes nor regulations defined what constituted a "satisfactory showing." *Id.* at 709, 513 S.E.2d 826-27. The contested provision in the Medicaid Manual attempted to define this standard by requiring "clear and convincing written evidence."

The *Dillingham* Court held the provision met the definition of an administrative "rule" under the APA because it created "a binding standard which interprets the eligibility provisions of the Medicaid

law and, in addition, describes the procedure and evidentiary requirements utilized by [DSS] in determining such eligibility." *Id.* at 710, 513 S.E.2d at 827; *see* N.C. Gen. Stat. § 150B-2(8a). Because the rule had not been adopted in accordance with Article 2 of the APA, as conceded by DSS, this Court concluded the rule was not valid. 132 N.C. App. at 710-11, 513 S.E.2d at 827. Consequently, DSS' reliance upon the unadopted rule for determining the applicant's eligibility for benefits was an error of law. *Id.* at 711, 513 S.E.2d at 828.

We are presented with similar circumstances in the present case. The Waiver provision at issue interprets Medicaid eligibility by defining those services Jonathan is eligible to receive under the Waiver program (the CAP Program). Thus, we conclude the trial court was correct in finding that the Waiver provision is a rule pursuant to the North Carolina APA. *See* N.C. Gen. Stat. § 150B-2(8a). Additionally, as respondent concedes, the Waiver was not promulgated in accordance with either the North Carolina APA or the federal APA. Consequently, we conclude the trial court did not err in finding the Waiver is neither state nor federal law. Nor did the trial court err in concluding respondent's reliance upon the Waiver to deny services to petitioner was an error of law.

Respondent urges, however, that the Waiver has the "force and effect of law" under the North Carolina Supreme Court's decision in *Arrowood v. North Carolina Dep't Health & Human Servs. (Arrowood II).*[2] *See* 353 N.C. 351, 543 S.E.2d 481 (2001), *rev'g per curiam for reasons stated in the dissenting opinion,* 140 N.C. App. 31, 535 S.E.2d 585 (2000) (*Arrowood I*). We disagree and conclude that *Arrowood II*'s holding is limited to the unique facts of that case.

In *Arrowood I*, the North Carolina Department of Health and Human Services ("DHHS") applied to the federal government for a waiver to reform the state welfare program. 140 N.C. App. at 33, 535 S.E.2d at 587. Upon receiving approval of the waiver, DHHS implemented a 24-month limitation on the receipt of welfare benefits by requiring all benefit applicants to sign a contract expressly limiting the receipt of benefits to 24 months. *Id.* Accordingly, the petitioner

---

2. We note that in its Final Agency Decision, respondent contradicted itself on whether the 2005 Waiver is federal or state law: "*[T]he Waiver is Federal Law* authorized by . . . the Code of Federal Regulations." "The Respondent objects and excepts the omission that the Code of Federal Regulations does authorize federal waivers but agrees that *the Waiver is not federal law* but is state law under [*Arrowood II*] . . . ." (Emphasis added.) On appeal, respondent does not contend whether the Waiver is state or federal law, rather it argues the Waiver has the "force and effect of law."

signed a contract containing the 24-month benefit limitation. *Id.* DHHS did not, however, promulgate any rules in accordance with the APA regarding the benefit limitation. *Id.* When DHHS terminated the petitioner's benefits after 24 months, the petitioner appealed the termination claiming that the 24-month limitation was neither state nor federal law and, thus, not enforceable. *Id.* at 34, 535 S.E.2d at 587-88.

Upon review by the superior court, DHHS' termination of the petitioner's benefits was affirmed and the petitioner appealed to the Court of Appeals. *Arrowood I*, 140 N.C. App. at 34, 535 S.E.2d at 588. A divided panel of this Court held that the 24-month limitation was a rule under the APA, and because DHHS failed to promulgate the rule in accordance with the North Carolina APA, the rule was not valid; DHHS' reliance upon the waiver was an error of law. *Id.* at 42, 535 S.E.2d at 592. Our Supreme Court reversed this decision, however, adopting the reasoning provided in the brief dissent in the Court of Appeals decision. *Arrowood II*, 353 N.C. 351, 543 S.E.2d 481.

In *Arrowood I*, the dissent concluded the 24-month limitation on benefits prescribed by the waiver was legally binding. *Arrowood I*, 140 N.C. App. at 44, 535 S.E.2d at 594 (Walker, J., dissenting). The dissent reasoned the waiver need not be promulgated under the APA due to the clarity of the waiver's terms and conditions and because the petitioner signed a contract that expressly limited his eligibility for benefits to 24 months. *Id.* at 44, 535 S.E.2d at 593.

Additionally, the *Arrowood I* dissent agreed with the holding in *Dillingham* that promulgation of a rule under the APA was required in that case in order for the rule to be valid. *Id.* The *Arrowood I* dissent distinguished the facts of that case by citing the lack of clarity presented in *Dillingham* wherein the Medicaid Manual required "clear and convincing written evidence," while the then-existing federal law required a "satisfactory showing" without defining how to meet this standard. *Id.* at 44, 535 S.E.2d at 594 (citing *Dillingham*, 132 N.C. App. at 711, 513 S.E.2d at 828 (1999)). Thus, "an APA rule was necessary in *Dillingham* in order to establish the proper burden of proof consistent with the federal law requirement of a 'satisfactory showing.'" *Id.*

We conclude the present case is similar to the facts presented in *Dillingham* and we agree with petitioners that *Arrowood II* is not controlling. The facts presented here lack the elements central to the *Arrowood I* dissent—the concurrence of the clarity of that waiver's terms and the notice afforded to petitioner by his contractual agree-

ment to the 24-month limit on his benefit eligibility. Here, the Waiver provision upon which respondent relied in order to deny petitioners' benefits lacks any meaningful clarity.

As the ALJ concluded, respondent based its denial of petitioners' services on the following language of the 2005 Waiver: "Individuals who live in licensed residential settings or unlicensed alternative family living arrangements may only receive the community component of the service." Additionally, "[n]either the term 'community' nor the term 'community component' is defined in the Waiver. Nevertheless, Respondent relies upon this sentence to deny these services . . . that had been covered under the previous Waiver[.]" We cannot agree with respondent's contention that this language in the Waiver "makes it very clear" that petitioners' benefits would be denied.

The record also reveals that respondent testified the Waiver does not state that the services provided to petitioner by Ms. McNeill cannot be provided by a third-party provider in a licensed community residential setting. Rather, the author of the Waiver provision testified that while third-party providers are not specifically prohibited by the Waiver, in her opinion, "it would be very incongruent" to have a third party come into a licensed facility to provide such services—although respondent had approved Ms. McNeill to do so since 2003.

Furthermore, while the record indicates Jonathan's treatment team was aware of the new waiver provisions when they formulated his Plan of Care in March of 2006 and that they were aware their request for Home and Community Support Services to be provided in the group home might not be approved, we cannot equate these facts with the contractual agreement that existed in *Arrowood I*. Mere knowledge of the potential for denial of services is quite distinct from an agreement to be bound by terms explicitly set forth in a written contract. To hold that petitioners' awareness in this instance constituted sufficient notice so as to bind him to the new Waiver terms would establish a precedent likely to produce undesirable results. The inevitable consequence would be the imposition of a fact-based inquiry in every case involving a waiver dispute to determine whether the complainant was properly afforded notice of the newly implemented waiver provisions.

Finally, as petitioners correctly assert, extending *Arrowood II* to the facts of this case would "enact fundamental changes in administrative law." Such a holding would be in stark contrast to the uniformity in this area of the law in jurisdictions across the United States. *See In*

*re Diel*, 158 Vt. 549, 614 A.2d 1223 (1992) (holding that a provision by Vermont's Human Services Board, which resulted in a denial of welfare benefits to certain persons, was invalid, because it had not been adopted as a rule); *Palozolo v. Dep't of Social Servs.*, 189 Mich. App. 530, 473 N.W.2d 765 (1991) (holding the state agency does not have "permissive statutory powers" to implement a provision in a program manual that was not properly promulgated under the state APA); *C.K. v. Shalala*, 883 F. Supp. 991, 1000 (D.N.J. 1995) (noting the New Jersey Department of Human Services implemented reforms to the state's welfare program after obtaining federal approval of its waiver request and *then* promulgating regulations), *aff'd by C.K. v. New Jersey Dep't of Health & Human Servs.*, 92 F.3d 171 (3d Cir. 1996).

We conclude *Arrowood I* is an exception to the general principle that "[a]n administrative rule is not valid unless adopted in accordance with the provisions of Article 2A of the Administrative Procedure Act" and its holding is limited to the unique facts of that case. *Dillingham*, 132 N.C. App. at 710, 513 S.E.2d at 827; N.C. Gen. Stat. § 150B-18. *Arrowood II* draws a clear line by which courts can recognize this exception—where the recipient of the benefits has contractually agreed to the terms of the waiver, obviating the need for further notice from promulgation of the rule in accordance with the APA. This provides legal certainty that is beneficial to both the courts and the parties. Therefore, because the provision of the waiver at issue here was a rule that was not promulgated in accordance with the APA, and the circumstances presented do not fit within the *Arrowood II* exception, the provision is not legally binding and could not properly serve as the legal basis for DHHS' denial of Jonathan's benefits.

We conclude that the superior court properly found the Waiver does not carry the force of law. Therefore, the superior court did not err in its *de novo* review and its order reversing DHHS' denial as arbitrary and capricious is affirmed.

## C. Corrective Payments

[3] The second issue on appeal is whether the superior court erred in denying petitioners' request for reimbursement for the rehabilitation services Jonathan's father paid out-of-pocket since respondent denied coverage for Jonathan's benefits. Petitioners assert the federal corrective payment regulation, 42 C.F.R. § 431.246 (2009), compels respondent to promptly reimburse petitioners for the improperly denied services. Respondent, on the other hand, contends that the federal vendor payment requirements prohibit it from making any

reimbursement directly to the recipient rather than to a Medicaid-certified vendor. *See* 42 U.S.C. § 1396a(a)(32) (2009); 42 C.F.R. §§ 447.10(d) & 447.25 (2009). We conclude petitioners are entitled to reimbursement.

### 1. Entitlement to Corrective Payments

Federal regulation of state Medicaid programs requires the state agency to "promptly make corrective payments, retroactive to the date an incorrect action was taken" if it is ultimately determined that the agency incorrectly denied coverage. 42 C.F.R. § 431.246 (2009). The "vendor payment principle," however, generally requires payment for Medicaid services to be made only to the provider of services. *See* 42 U.S.C. § 1396a(a)(32); 42 C.F.R. § 447.10(d). This requirement encourages provider participation in Medicaid by ensuring that providers will be paid for their services absent fear of nonpayment. *See Greenstein by Horowitz v. Bane*, 833 F. Supp. 1054, 1060 (S.D.N.Y. 1993). Following this rationale, there is a logical exception to the vendor payment principal in the context of corrective action payments where the provider has already been paid for her services, and only the recipient requires reimbursement. *See Greenstein*, 833 F. Supp. at 1069; *see also Kurnik v. Dep't of Health and Rehabilitative Servs.*, 661 So. 2d 914, 918 (Fla. Dist. Ct. App. 1995) (permitting direct reimbursement for out-of-pocket expenditures for needed medication where recipient's eligibility was unreasonably delayed); *Schott v. Olszewski*, 401 F.3d 682 (6th Cir. 2005) (requiring state agency to directly reimburse claimant for expenses incurred to obtain medical services while awaiting the long-delayed approval of her Medicaid application).

In the present case, we conclude that respondent incorrectly denied Ms. McNeill's services under Jonathan's Plan of Care. Petitioners have paid Ms. McNeill for her services throughout this appeal, and therefore it is only the petitioners who require reimbursement. We conclude the vendor payment principle does not preclude DHHS from making corrective action payments directly to petitioners. *See, Greenstein*, 833 F. Supp. at 1069. Therefore, respondent must make corrective payments retroactive to the date on which these services were improperly denied. *See* 42 C.F.R. § 431.246.

Respondent contends that *Greenstein* limits the exception to the vendor payment principle to those cases wherein the benefit recipient incurs expenses *prior* to acquiring Medicaid eligibility. Respondent mistakenly concludes that petitioners cite no authority for post-

eligibility reimbursements. *See Greenstein*, 833 F. Supp. at 1063 (recognizing reimbursement to the plaintiffs for services provided both prior to and after the plaintiffs had become eligible for benefits).

Additionally, the Fourth Circuit Court of Appeals, addressing claims for reimbursement of expenses resulting from improperly denied Medicaid benefits under Virginia's state plan, noted that

under 42 U.S.C. § 1396a(a)(3) the state Medicaid plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied." Under the implementing regulations, 42 C.F.R. § 431.220, *this includes any applicant who is denied assistance, as well as any recipient whose assistance is discontinued.* And, under 42 C.F.R. § 431.246, "if . . . the hearing decision is favorable to the applicant," then the state "agency must promptly make corrective payments, retroactive to the date an incorrect action was taken." Therefore, all participating states are required to have state procedures whereby applicants and recipients denied assistance may appeal that decision and, if they prevail at the hearing, receive benefits retroactive to the time of the incorrect decision.

*Randall v. Lukhard*, 709 F.2d 257, 269 (4th Cir. 1983), *aff'd in part, rev'd in part and remanded*, 729 F.2d 966 (4th Cir. 1984). Therefore, that the reimbursement sought in this case is for services provided after Jonathan was deemed eligible for Medicaid is not proper grounds for denying reimbursement.

### 2. Amount of Reimbursement

Having established that respondent must reimburse petitioners, the proper amount of reimbursement must be determined. Respondent is skeptical as to the reasonableness of the $22,925.00 that Michael McCrann paid out-of-pocket to maintain Ms. McNeill's services and requests that this matter be remanded to the superior court for a determination of expenses. Petitioners offer no evidence as to the reasonableness of these payments, but merely present evidence that the payments were made and that reimbursement should not be limited to the Medicaid rate. The evidence provided is insufficient to determine the basis for the amount of payments or the valuation of the services provided by Ms. McNeill. Therefore, this matter must be remanded to the superior court for an evidentiary hearing to determine the proper amount of reimbursement.

## IV. Conclusion

We find that the superior court applied the appropriate standard of review in examining respondent's Final Agency Decision. The superior court also applied this standard properly in concluding that respondent wrongfully denied the Home and Community Supports component of Jonathan's Plan of Care. Furthermore, we conclude that petitioners should be reimbursed for the reasonable costs expended to maintain the services from the time of respondent's wrongful denial.

Accordingly, the superior court's order reversing the Final Agency Decision is affirmed. The superior court's order denying petitioners' request for reimbursement for rehabilitation services paid out-of-pocket is reversed. We remand this matter for a determination of the proper amount of reimbursement.

Affirmed in part, reversed and remanded in part.

Judges HUNTER, Robert C., and BRYANT concur.